# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

John Kaweske, Plaintiff,

v.

Banco Bradesco S.A., Bradesco Securities U.S., Tricon Energy Ltd., Bermudes Law Firm, and Does 1-50,

Defendants.

Case No.: [To be Assigned]

COMPLAINT FOR DAMAGES, RICO, FRAUD, MONEY LAUNDERING, AND RELATED RELIEF

JURY TRIAL DEMANDED

## I. JURISDICTION AND VENUE

This Court has jurisdiction under 28 U.S.C. §§ 1331 and 1332 because this action arises under the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961–1968, and related federal statutes. Venue is proper in the Southern District of New York under 28 U.S.C. § 1391 because substantial parts of the events or omissions giving rise to the claims occurred in this District, including U.S. dollar wire transfers processed through New York correspondent banks, and Bradesco Securities operates in New York.

## II. PARTIES

Plaintiff John Kaweske is a U.S. citizen, with current residency claimed in South Dakota for purposes of this Complaint.

Defendant Banco Bradesco S.A. is a major Brazilian bank that conducts business in the United States through Bradesco Securities, located in New York, NY.

Defendant Tricon Energy Ltd. is a multinational energy trading company headquartered in Houston, Texas, conducting business internationally, including in Brazil.

Defendant Bermudes Law Firm is a Brazilian law firm that aided and abetted the concealment of the wrongful acts alleged herein.

## III. GENERAL ALLEGATIONS

Plaintiff invested approximately $20 million USD between 2004 and 2009 to establish Bio Petro, a biodiesel production company in Brazil, which later became Bio Clean Energy S.A. Plaintiff alleges that Defendants engaged in a coordinated scheme to defraud, launder funds, and interfere with Plaintiff's business, resulting in the loss of his investment and over $300 million in consequential damages including lost opportunities, reputational harm, and credit destruction.

On information and belief, Defendants utilized U.S. correspondent banking in New York to facilitate dollar transactions involved in the scheme. Plaintiff further alleges that the scheme culminated in the unlawful takeover of the biodiesel facility in Brazil, with local actors allegedly linked to criminal organizations.

## IV. CLAIMS FOR RELIEF

### COUNT I – CIVIL RICO (18 U.S.C. §§ 1962(c), 1962(d))

Against all Defendants for conducting or participating in the affairs of an enterprise through a pattern of racketeering activity, including wire fraud (18 U.S.C. § 1343) and money laundering (18 U.S.C. §§ 1956, 1957).

### COUNT II – FRAUD AND FRAUDULENT CONCEALMENT

Under New York common law and as predicate acts for RICO, Defendants knowingly misrepresented and concealed material facts regarding the investment, banking transactions, and facility control, causing substantial damages.

### COUNT III – CIVIL CONSPIRACY (NEW YORK COMMON LAW)

Defendants conspired to commit fraud and facilitate the racketeering enterprise, acting in concert to deprive Plaintiff of property and investment capital.

### COUNT IV – TORTIOUS INTERFERENCE WITH BUSINESS AND PROSPECTIVE ADVANTAGE (NEW YORK COMMON LAW)

Defendants knowingly interfered with Plaintiff's business operations and opportunities by orchestrating the facility takeover and preventing access to capital and contracts.

**COUNT V – MONEY LAUNDERING (18 U.S.C. §§ 1956, 1957)**
As predicate acts for RICO, Defendants knowingly conducted financial transactions using the proceeds of unlawful activity and structured them through Brazilian and U.S. banking channels to conceal their source.

**COUNT VI – PUNITIVE AND TREBLE DAMAGES**
Plaintiff seeks punitive damages under New York law for willful and malicious misconduct, and treble damages under 18 U.S.C. § 1964(c) for the RICO violations.

**V. PRAYER FOR RELIEF**
WHEREFORE, Plaintiff respectfully requests that this Court:
1. Enter judgment in favor of Plaintiff and against all Defendants, jointly and severally;
2. Award compensatory damages of $320,000,000;
3. Award treble damages under 18 U.S.C. § 1964(c);
4. Award punitive damages under New York law;
5. Order referral of this matter to the SEC, DOJ, and FinCEN for further investigation;
6. Award costs, attorneys' fees, and such other relief as the Court deems just and proper.

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

John Kaweske,
Plaintiff,

v.

Banco Bradesco S.A.;
Bradesco Securities / Bradesco U.S.;
Tricon Energy, Inc.;
Bermudes Law Firm,
Defendants.

Case No.: _____

## COMPLAINT FOR RICO, FRAUD, AND RELATED CLAIMS

### I. INTRODUCTION

This is a civil action under the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961–1968, and applicable state law, arising from a coordinated scheme involving international money laundering, wire fraud, and concealment of assets that caused the Plaintiff direct damages of approximately $20 million and consequential losses exceeding $300 million.

### II. JURISDICTION AND VENUE

This Court has federal question jurisdiction under 28 U.S.C. § 1331 and 18 U.S.C. § 1964(c) because this action arises under the RICO statute. Diversity jurisdiction also exists under 28 U.S.C. § 1332 because Plaintiff is a citizen of South Dakota and Defendants are citizens of Brazil and Texas, and the amount in controversy exceeds $75,000. Venue is proper in the Southern District of New York because substantial parts of the events and transactions giving rise to these claims occurred in this District, including wire transfers that, on information and belief, cleared through New York correspondent banks.

### III. PARTIES

Plaintiff John Kaweske is an individual domiciled in South Dakota and founder of Bio Petro S.A., a Brazilian biodiesel venture that raised approximately $20 million in investment capital.

Defendant Banco Bradesco S.A. is a Brazilian financial institution that maintained Plaintiff's corporate account and facilitated the money laundering scheme alleged herein.

Defendant Bradesco Securities / Bradesco U.S. is Bradesco's U.S. affiliate conducting banking operations in New York, including the handling of correspondent wire transactions relevant to this complaint.

Defendant Tricon Energy, Inc. is a Texas-based entity that, on information and belief, participated in transactions forming part of the scheme.

Defendant Bermudes Law Firm is a Brazilian law firm that aided and abetted the concealment of Plaintiff's claims and participated in the overall enterprise.

### IV. FACTUAL ALLEGATIONS

Between approximately 2004 and 2009, Bio Petro S.A. raised approximately $20 million for the construction of a biodiesel facility in Brazil. These funds were transferred by Plaintiff and other investors to Brazilian bank accounts controlled by Plaintiff and Bio Petro. On information and belief, these USD transfers cleared through U.S. correspondent banks in New York.

Plaintiff's Bradesco account in Brazil was subsequently used for third-party money laundering activity, as documented in Brazilian regulatory and banking records attached as

Exhibit 3. The laundering of funds and concealment of the scheme caused the total loss of the facility investment, destruction of Plaintiff's reputation and credit, and loss of opportunities to develop other ventures.

Defendant Bermudes Law Firm furthered the scheme by aiding in the concealment of these actions and by facilitating a rapid 48-hour appellate ruling in Brazil, contributing to the deprivation of Plaintiff's rights.

These coordinated acts constitute a pattern of racketeering activity under 18 U.S.C. § 1961(5), including wire fraud and money laundering, conducted through an enterprise consisting of the Defendants and their co-conspirators.

## V. CAUSES OF ACTION
COUNT I – RICO (18 U.S.C. § 1962(c))

Defendants conducted or participated in an enterprise affecting interstate and foreign commerce through a pattern of racketeering activity, including wire fraud and money laundering, causing damages to Plaintiff.

COUNT II – RICO CONSPIRACY (18 U.S.C. § 1962(d))

Defendants conspired to violate 18 U.S.C. § 1962(c) by agreeing to conduct and participate in the enterprise through a pattern of racketeering activity.

COUNT III – COMMON LAW FRAUD

Defendants knowingly made false representations and concealed material facts to induce investment and to misappropriate funds, causing Plaintiff's damages.

COUNT IV – AIDING AND ABETTING FRAUD / MONEY LAUNDERING

Defendant Bermudes Law Firm and others knowingly provided substantial assistance to the primary wrongdoers in carrying out the fraud and laundering of funds.

COUNT V – TORTIOUS INTERFERENCE / LOSS OF BUSINESS OPPORTUNITY

Defendants' acts interfered with Plaintiff's ability to operate Bio Petro S.A. and to pursue other ventures, causing extensive consequential damages.

## VI. DAMAGES
Plaintiff has suffered direct damages of approximately $20 million, consequential and reputational damages estimated at $300 million, and is entitled to treble damages under RICO, plus costs and attorneys' fees.

## VII. PRAYER FOR RELIEF
WHEREFORE, Plaintiff respectfully requests judgment against Defendants, jointly and severally, as follows:

a) Treble damages pursuant to 18 U.S.C. § 1964(c);
b) Compensatory damages in the amount of $320 million;
c) Costs and attorneys' fees;
d) Referral of this matter to the U.S. Department of Justice, SEC, and FinCEN for investigation;
e) Such other and further relief as the Court deems just and proper.

# EXHIBITS

Exhibit 1: Regulatory Dossier Excerpts, ANP Approvals

Exhibit 2: Investor Transaction Timetable (2004–2009)

Exhibit 3: Tricon Legal Actions (Confidential filed under seal)

Exhibit 4: Bradesco Legal Actions (Confidential filed under seal)

Exhibit 5: Bradesco Prior Money Laundering Cases

Exhibit 6: Background Information prepared by John Kaweske



**Bio Clean Energy, S.A. - Bio Petro Producao e Commercializacao de Biocombustiveis, LTDA.  located in Araraquara, SP**

**Exhibit 1: ANP Regulatory Authorizations – Bio Petro S.A.**

This exhibit provides official excerpts from the Brazilian National Agency of Petroleum, Natural Gas and Biofuels (ANP), confirming Bio Petro Produção e Comercialização de Biocombustíveis Ltda.'s authorization to construct and commercialize its biodiesel production facility. These authorizations establish that Bio Petro operated as a legitimate, government-recognized entity.

**Summary of ANP Authorizations**

1. Autorização nº 334/2009: Grants authorization for the construction of Bio Petro's biodiesel facility.

2. Autorização nº 68/2011: Grants authorization for commercialization of biodiesel produced by Bio Petro.

These documents demonstrate:

- Bio Petro's operations were fully authorized by ANP.

- Investments were made in a legitimate, regulated enterprise.

- Supports claims of fraud and money laundering by showing that external actions, not lack of legitimacy, caused the loss.

**Excerpts from ANP Authorizations**

Autorização nº 334/2009 (Construction Approval)

"Autoriza a etapa de construção da planta industrial de produção de biodiesel da empresa Bio Petro Produção e Comercialização de Biocombustíveis Ltda., localizada no Brasil, em conformidade com as normas da ANP."

Autorização nº 68/2011 (Commercialization Approval)

"Fica autorizada a atividade de comercialização de biodiesel produzido pela empresa Bio Petro Produção e Comercialização de Biocombustíveis Ltda., conforme os termos da regulamentação da ANP."

**Relevance Notes**

These authorizations confirm that Bio Petro S.A. was a government-recognized entity in Brazil. They demonstrate the legitimacy of the $20 million investment, supporting the RICO and fraud claims by showing that external interference  led to the plaintiff's losses.

**Exhibit 2:**

**Exhibit 2: Correspondence & Timeline of Events**
Purpose:
To demonstrate the timeline of key communications and actions that support the pattern of fraud, coordination, and judicial misconduct that form the basis of the RICO and fraud claims.

This exhibit shows the timeline of interactions with Bermudes Law Firm, Tricon, and related parties, highlights the 48-hour appeals court ruling, and connects communications to actions that harmed Bio Petro and John Kaweske.

| Date / Period | Event / Action | Parties Involved | Notes / Relevance to Complaint |
|---|---|---|---|
| 2004 – 2005 | Initial $1M transfer to Brazil | John Kaweske / Bio Petro / Bradesco | Funds to launch biodiesel project |
| 2008 – 2009 | Bio Petro obtains ANP authorization for construction | ANP / Bio Petro | Confirms regulatory legitimacy |
| 2011 | Bio Petro obtains ANP commercialization authorization | ANP / Bio Petro | Supports investment legitimacy |
| 2017 | Bermudes enters appearance in case | Bermudes Law Firm | Starting point for alleged concealment |
| 2019 | Plaintiff requests Justiça Gratuita | Plaintiff / Court / Bermudes | Delay tactics and procedural maneuvering |
| 2023 | Appeals court rules against plaintiff in 48 hours | Court / Bermudes | Evidence of possible graft or undue influence |

**Exhibit 3: (Filed Under Seal – Confidential Pursuant to Brazilian Law)**

See Attached Document / Exhibit 3

Tricon Lawsuit Filing – Confidential under Brazilian Law

Purpose of Exhibit:
This exhibit contains filings and supporting documentation from the Tricon litigation in Brazil, which demonstrate the underlying facts of the alleged fraud, unauthorized transactions, and potential judicial misconduct relevant to this RICO and fraud complaint in the United States.

Confidentiality Notice:
This document is filed under confidentiality pursuant to Brazilian law. The underlying case in Brazil is under judicial secrecy ("segredo de justiça"), and disclosure of its contents is restricted under Brazilian legal provisions.
Plaintiff respectfully requests that this exhibit be filed under seal in accordance with applicable U.S. court procedures, to maintain compliance with Brazilian confidentiality requirements and to prevent unauthorized public dissemination.

Summary of Contents:

- Brazilian court filings from Bio Petro Produção e Comercialização de Biocombustíveis Ltda. versus Tricon Energy do Brasil

- Documentation of unauthorized methanol transactions and alleged fraudulent activity

- Evidence supporting allegations of money laundering and improper deposit methods

**Exhibit 4 (Filed Under Seal – Confidential Pursuant to Brazilian Law)**
Bradesco Lawsuit – Proof of 48-Hour Appeal Handling and Denial of Oral Argument

See Attached Document / Exhibit 4

This exhibit is filed under seal to comply with Brazilian judicial secrecy (segredo de justiça) laws. Public disclosure could violate Brazilian law and expose the Plaintiff to legal liability. Accordingly, the Plaintiff respectfully requests this exhibit remain confidential and sealed.

**Purpose of Exhibit 4**
1. Demonstrates irregular 48-hour handling of Plaintiff's appeal..
2. Shows denial of oral argument rights under Article 937 of the Brazilian Civil Procedure Code.
3. Supports allegations of judicial irregularities, aiding and abetting by Bermudes Law Firm, and pattern of conduct relevant to RICO claims.


**Summary of Document**
The Agravo em Recurso Especial attached under seal shows:
- The appeal was distributed and decided in an extremely expedited manner (48 hours).
- Plaintiff's request for oral argument was filed but ignored.
- This expedited handling coincides with the alleged influence benefiting Bradesco and Tricon.
- Confirms the pattern of procedural irregularities that supports the RICO and fraud claims in the U.S. action.

**Confidentiality and Filing Under Seal**
Plaintiff requests this exhibit remain sealed to comply with Brazilian secrecy laws. The U.S. court is respectfully asked to honor international legal obligations while allowing this exhibit to support the claims presented in the complaint.

**Exhibit 5 – Bradesco Prior Money Laundering and Regulatory History**

This exhibit summarizes publicly available information and regulatory actions against Banco Bradesco S.A., demonstrating a history of money laundering and anti-money laundering (AML) compliance failures. This evidence is submitted to support the RICO claim by showing a pattern of racketeering activity and knowledge of systemic misconduct.

| Year | Event / Investigation | Outcome / Penalty | Source (Public Record) |
|------|----------------------|-------------------|------------------------|
| **2016** | Operation Zelotes & Lava Jato investigations implicate Bradesco executives in money laundering and corruption schemes. | Executives charged; AML concerns formally noted in Brazil. | Reuters / Folha de São Paulo (2016) |
| **2018** | Brazil Central Bank fines Bradesco for AML reporting failures and suspicious activity reporting gaps. | Penalty approximately R$22 million (~$6M USD). | Banco Central do Brasil / Valor Econômico (2018) |
| **2020** | Bradesco cited in FinCEN Files leak for handling suspicious transfers flagged to U.S. authorities. | No U.S. enforcement but reputational damage; AML compliance weaknesses confirmed. | ICIJ / FinCEN Files (2020) |
| **2021** | Brazilian authorities issue additional fines for Bradesco's failure to prevent money laundering by third parties. | Cumulative penalties exceed R$70 million (~$14M USD). | Valor Econômico / Brazilian Court Records (2021) |

This timeline illustrates Bradesco's repeated exposure to money laundering

allegations, fines, and regulatory actions, demonstrating a pattern of conduct that aligns with the Plaintiff's allegations. The history supports the assertion that Bradesco had knowledge of systemic AML failures and continued to permit illicit transactions, strengthening the RICO predicate of a 'pattern of racketeering activity.'

Exhibit 5 Visual Timeline – Bradesco Prior Money Laundering & AML Violations

The following visual timeline illustrates the pattern of Bradesco's prior money laundering and anti-money laundering regulatory violations, supporting the RICO claim of a 'pattern of racketeering activity.'



Exhibit 6: Background Information prepared by John Kaweske

# Dossier on the Destruction of Bio Clean Energy, and its subsidiary, Bio Petro Produção e Comercialização de Biocombustíveis Ltda.

## Organized Crime, Permitted Money Laundering, and patterns suggestive of Judicial Corruption by Tricon, Banco Bradesco, and Bermudes law firm by Marcelo Mendes de Souza and Frederico da Silva Neves.



Bio Clean Energy - Biofuels Facility in Araraquara, SP 2025 (Source Google)

**Case Title:**
Destruction of Bio Clean Energy.  Organized Crime, Permitted Money Laundering, and Judicial Corruption by Tricon, Banco Bradesco, and Bermudes law firm

**Prepared by:**
John Kaweske
720-775-7744

# Preface: United States Legal Violations and Jurisdiction

This dossier is submitted in support of formal complaints and regulatory actions within the jurisdiction of the United States. Although the events described occurred principally in Brazil, the conduct of Tricon, Banco Bradesco, and the Bermudes law firm has triggered multiple violations of U.S. federal law, including statutes governing foreign corrupt practices, anti money laundering, investor protection, and wire fraud.

Bio Clean Energy was established with significant capital from U.S. investors and maintained substantial financial, commercial, and legal ties to the United States. Tricon, an international chemical trading company, operated through both U.S. and Brazilian entities during the period in question. Unauthorized transactions, money laundering,, and the ultimate loss of all company assets directly harmed U.S. citizens and residents, with illicit financial flows moving across international borders and through U.S. linked financial institutions.

The specific U.S. statutes and regulatory frameworks implicated in this matter include, but are not limited to:

- **Foreign Corrupt Practices Act (FCPA), 15 U.S.C. §§ 78dd-1, et seq.**
  *(Prohibits bribery of foreign officials and requires accurate books and records for U.S.-linked issuers)*

- **Bank Secrecy Act (BSA) and U.S. Anti–Money Laundering Regulations, 31 U.S.C. §§ 5311–5332; 18 U.S.C. §§ 1956–1957**
  *(Governs financial institution reporting, anti–money laundering controls, and criminalizes money laundering and related offenses)*

- **Securities and Exchange Commission (SEC) Rules and Disclosure Requirements, including Section 10(b) and Rule 10b-5, 15 U.S.C. § 78j(b); 17 C.F.R. § 240.10b-5**
  *(Requires public companies to disclose material legal risks and prohibits fraud or misrepresentation in connection with securities)*

- **Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961–1968**
  *(Provides for criminal and civil penalties for acts performed as part of an ongoing criminal organization, including money laundering, fraud, and bribery)*

- **Wire Fraud and Conspiracy Statutes, 18 U.S.C. §§ 1343 (Wire Fraud) and 371 (Conspiracy)**

*(Criminalizes schemes to defraud involving electronic communications and conspiracies to commit federal offenses)*

The pattern of conduct described in this dossier demonstrates not only violations of Brazilian law, but also substantial breaches of U.S. legal obligations intended to protect American investors, prevent international financial crime, and maintain the integrity of global markets. For these reasons, we respectfully request that all appropriate U.S. agencies and authorities review this case, initiate investigations as warranted, and coordinate with international partners to pursue accountability and restitution.

---

## Table of Contents

1. Executive Summary

2. Timeline of Events

3. Background and Key Players

4. Incident Narrative

    ○ Tricon's Invasion and Unauthorized Methanol Sales

    ○ Bradesco's Permitted Money Laundering (2016–2017)

    ○ Judicial Corruption patterns and the Role of Bermudes Law Firm

5. Financial Impact Statement

6.  Pattern and Precedent

7.  Legal and Regulatory Violations

8.  Requested Actions

9.  Media and Regulatory Notification

10. Supporting Evidence Index

11. Appendices

---

## 1. Executive Summary

This dossier details the systematic destruction of Bio Clean Energy, a $20 million U.S. backed clean energy facility in Araraquara, Brazil. It documents organized crime, led by Tricon, and participants such as Banco Bradesco and then later the Bermudes law firm to seize company assets through illegal invasion, unauthorized chemical sales, permitted money laundering, and judicial manipulation. Despite multiple written warnings, legal notifications, and real-time alerts to authorities, Tricon continued to use Bio Clean Energy's licenses and name to conduct illegal methanol sales. Banco Bradesco knowingly permitted money laundering and unauthorized transactions in Bio Clean Energy's accounts throughout 2016 and 2017, despite formal compliance complaints. When challenged in court, the Bermudes law firm secured a final appeals ruling in just 48 hours, a speed reserved for only those who use influence. The resulting loss was total: Bio Clean Energy, its U.S. investors, and its mission were wiped out while authorities and the legal system protected the perpetrators.

---

## 2. Timeline of Events (Corrected)

| Date | Event Description |
|---|---|
| Nov 1–4, 2016 | John Kaweske, as President of Bio Clean Energy, sends multiple emails and phone calls to Tricon executives (Cleber Fernandes, Marina Nicolia), explicitly prohibiting unauthorized purchases or use of company licenses. |
| 2016–2017 | Banco Bradesco permits unauthorized third-party access, illicit transactions, and money laundering in Bio Clean Energy accounts, despite formal compliance complaints from management and U.S. investors. |

| Jan 19, 2017 | ANP (Agência Nacional de Petróleo) notifies Kaweske of illegal methanol purchases made in Bio Clean Energy's name without his authorization. |
| Jan 25, 2017 | Formal legal notification sent to Tricon's executives and offices by company attorney Rodrigo Palaia, reinforcing that all sales and purchases using company licenses are illegal and unauthorized. |
| July 11, 2017 | John Kaweske sends a letter to Tricon headquarters, warning of imminent legal and criminal action over continued use of company credentials for methanol sales. |
| July 16, 2017 | Tricon's Bryan Elwood replies, declining further business but fails to address or admit to past unauthorized sales. |
| 2017 | Tricon invades and takes control of the Bio Clean Energy facility, using fraudulent licenses for chemical distribution. **Police are notified in real time; no intervention occurs.** |
| 2019–2020 | Lawsuits filed by Bio Clean Energy. Bradesco continues to hold and process disputed assets. |
| 2021 | Bermudes files appeals and motions for Bradesco; São Paulo appeals court issues 48-hour final ruling in their favor. |
| 2022 | Facility lost, $20 million investment destroyed; no accountability for perpetrators. |

## 3. Background and Key Players

**Bio Clean Energy:**
A five-acre biodiesel facility built with U.S. and international investment, intended to bring sustainable energy and economic development to São Paulo state.

**Tricon:**
Tricon is an international chemical trading company that was the supplier to Bio Clean Energy in methanol supply. Between 2016 and 2017, Tricon orchestrated unauthorized methanol sales using Bio Clean Energy's licenses, despite multiple formal warnings and legal notices from company management and counsel. Tricon also became involved in the disputed occupation and operation of the Bio Clean Energy facility in 2017, proceeding in direct violation of written legal instructions and under formal complaint to both Brazilian and U.S. authorities.

**Banco Bradesco:**
One of Brazil's largest banks, with a public record of money laundering compliance failures and U.S. fines exceeding $28 million. Bradesco served as the main financial institution during and after the facility takeover and **knowingly permitted money**

**laundering and unauthorized third-party transactions in Bio Clean Energy's accounts in 2016 and 2017**.

**Bermudes (Law Firm):**
Bermudes represented Bradesco in all legal actions involving Bio Clean Energy. In this case, Bermudes filed appeals and motions that resulted in a 48-hour court ruling favoring Bradesco.

**Brazilian Appeals Judges:**
Although we defer to the appropriate authorities to investigate potential judicial misconduct, we find it necessary to highlight the identities of the three judges who issued a critical ruling in less than 48 hours, extensive legal and factual complexities.
Their decision, rendered with remarkable speed and without apparent review of the full evidentiary record, raises serious concerns regarding procedural fairness and possible external influence.

Desembargador José Cícero Landin Neto – *Relator*

Desembargadora Maria do Socorro Barreto Santiago – *1st Voting Judge*

Desembargador Lidivaldo Reaiche Raimundo Britto – *2nd Voting Judge*

---

# 4. Incident Narrative

Bio Clean Energy S.A., a U.S.-funded Brazilian corporation, is currently pursuing legal action in Brazil against the following parties for direct damages and unlawful conduct:

**1. Banco Bradesco S.A.**
Bio Clean Energy is seeking **R$380 million (approximately USD 70 million)** in damages from Bradesco due to its central role in permitting unauthorized transactions, enabling fraudulent transfers by third parties, and violating anti-money laundering protocols. Bradesco's misconduct directly facilitated the dismantling of company operations and permanent investor losses. Additional claims will be sought for **punitive damages**, **financial fraud**, **institutional negligence**, and **violations of international banking law**.

**2. Tricon Energy Group and Related Entities**
Tricon and its Brazilian partners are subject to ongoing legal proceedings seeking **R$450 million (approximately USD 85 million)** in compensatory damages for the illegal seizure of Bio Clean Energy's São Paulo facility. This includes losses from stolen

inventory, misappropriated contracts, and illegal licensing of biodiesel and chemical products. Additional actions are expected for **civil conspiracy**, **commercial theft**, **environmental violations**, and **criminal racketeering**, both in Brazil and the United States.

These amounts reflect only **base damages** and do not yet include full **loss of future income**, **reputational harm**, **investor distress**, or **international legal fees**. The actual recoverable damages are expected to exceed **USD 200 million**.

We request U.S. authorities to monitor and investigate these matters under applicable U.S. law and international cooperation protocols, given the substantial U.S. investor exposure, banking system implications, and the scale of transnational financial misconduct.

**B. Tricon's Invasion and Unauthorized Methanol Sales, Timeline and Evidence**

- From November 2016 to July 2017, John Kaweske and Bio Clean Energy's counsel sent multiple explicit written warnings and legal notices to Tricon executives, stating that no third party was authorized to use Bio Clean Energy's licenses or facilities for methanol purchases or distribution.

- Despite these warnings and a formal notification from Brazil's petroleum regulator (ANP) of illegal sales, Tricon ignored all instructions and continued unauthorized methanol transactions using the company's name.

- In July 2017, facing continued illegal activity, Kaweske notified Tricon's U.S. headquarters of the risk of criminal prosecution. Tricon responded only to cut off future business, never addressing or correcting the unlawful sales already conducted.

- In 2016 and 2017, Tricon forcibly occupied the Bio Clean Energy facility, using fraudulent documents and licenses, while local police failed to intervene despite real-time alerts and lawsuits. This enabled Tricon to control company operations and divert chemicals into the black market.

**B. Bradesco's Permitted Money Laundering (2016–2017)**

- During 2016 and 2017, Banco Bradesco knowingly permitted unauthorized third parties affiliated with Tricon to access and control Bio Clean Energy's bank accounts.

- Multiple illicit transactions and large, irregular payments for fuel and chemicals were processed using forged documentation and without company consent.

- Despite **multiple formal compliance complaints** from Bio Clean Energy's management and U.S. investors detailing unauthorized transactions, third-party access, and ongoing money laundering controls at Bradesco failed to freeze accounts, investigate, or report suspicious activity.

- This willful neglect enabled systematic money laundering, asset stripping, and contributed directly to the $20 million loss suffered by U.S. and international investors.

**C. Judicial Corruption and the Role of Bermudes Law Firm**

- After filing lawsuits seeking damages to recover financial losses from Bradesco, Bio Clean Energy encountered judicial manipulation by Bermudes, the law firm representing Bradesco.

- Bermudes filed appeals and motions that received extraordinary, priority attention from the São Paulo appeals court, resulting in a final decision in just 48 hours.

- This level of judicial speed is unattainable for ordinary litigants and matches patterns identified by Transparency International and legal scholars as red flags for judicial manipulation and corruption in Brazil's courts.

- The court ruling ignored clear evidence of criminal wrongdoing and asset theft, instead protecting the interests of Bradesco and the law firm, Bermudes.

---

## 5. Financial Impact Statement

- **Total Direct Loss:** $20 million (facility, inventory, business value)

- **Investor Breakdown:** U.S. citizens, international investors, company founders

- **Supporting Documentation:** Financial statements, investor contracts, bank records

---

## 6. Pattern and Precedent

**Bradesco:**

- Paid $28 million in U.S. fines for anti-money laundering failures.

- Named in Operation Car Wash and multiple corruption scandals.

**Tricon:**

- Allied with the largest criminal organization in Brazil, the PCC, known for asset seizures and regulatory evasion tactics.

- Ignored formal legal and regulatory directives for months while illegally conducting business.

**Bermudes Law Firm:**

- Bermudes is recognized as one of Brazil's most prominent law firms, frequently representing major corporate clients in high-profile litigation. In this case, Bermudes filed the appeals and motions that resulted in a 48-hour court ruling in favor of Bradesco. The extraordinary speed of this judicial decision has raised serious questions about the impartiality and integrity of the legal process.

**Brazilian Systemic Risk:**

- Petrobras ($850 million U.S. and Brazilian fines, 2018)

- JBS SA ($128 million U.S. fine, 2020)

- Pattern of lack of local accountability, international enforcement, and ongoing impunity for well-connected interests.

---

# 7. Legal and Regulatory Violations

- **Brazilian Law:** Theft, fraud, conspiracy, banking and anti–money laundering violations, judicial misconduct

- **U.S. Law:** FCPA (Foreign Corrupt Practices Act), anti–money laundering, investor protection, wire fraud

- **International Treaties:** UN Convention Against Corruption, Inter-American Convention Against Corruption

---

## 8. Requested Actions

- Immediate investigation of Tricon, Banco Bradesco, and Bermudes by U.S. DOJ, SEC, FinCEN, and Brazilian authorities.

- Asset freeze on disputed property and related accounts.

- Public inquiry into judicial manipulation and expedited rulings.

- Criminal referral and restitution to affected investors.

---

## 9. Regulatory and Oversight Contact List

**Securities and Exchange Commission (SEC)**

- Whistleblower Tips: https://www.sec.gov/whistleblower/submit-a-tip

- Enforcement Division Email: enforcement@sec.gov

- Office of International Affairs: oia@sec.gov

**U.S. Department of Justice (DOJ), Criminal Division – Fraud Section**

- FCPA (Foreign Corrupt Practices Act) Unit

- Report Corruption: FCPA.Fraud@usdoj.gov

- General Public Inquiry: crm.foia@usdoj.gov

- Main Phone: +1 (202) 514-2000

**Federal Bureau of Investigation (FBI), International Corruption Unit**

- International Corruption Complaint Form:
  https://www.fbi.gov/contact-us/field-offices/international-corruption-unit

- Main Email: icu@ic.fbi.gov

- Main Phone: +1 (202) 324-3000

**Financial Crimes Enforcement Network (FinCEN), U.S. Treasury**

- Suspicious Activity Reports & Tips: https://www.fincen.gov/contact

- General Inquiries: frc@fincen.gov

- Main Phone: +1 (800) 767-2825

**Office of Inspector General (OIG), U.S. Department of State**

- Report Fraud, Waste, or Abuse: https://oig.state.gov/hotline

- Email: oighotline@state.gov

- Main Phone: +1 (202) 647-3320

**U.S. Department of State – Bureau of Economic and Business Affairs (EB)**

- Contact for international business concerns: EB-Press-Inquiries@state.gov

- Main Phone: +1 (202) 647-7575

---

## 10. Supporting Evidence Index

| Exhibit # | Description | Relevance |
|---|---|---|
| 1 | Facility photo (attached) | Proof of asset at center of dispute |
| 2 | Police reports (date) | Evidence of invasion and lack of response |
| 3 | Tricon Notifications | Money Laundering and Facility Invasion |

| 4 | Bradesco Bank Statements | Bank's inaction on money laundering |
| 5 | Court ruling (48-hour appeal, date, filed by Bermudes) | Example that matches pattern of judicial manipulation and Bermudes' role |
| 6 | Investor contracts | Establishes U.S. investor interest |
| 7 | Media coverage / legal filings | Pattern of prior corruption cases |
| 8 | Full timeline and email documentation (from your upload) | Proof of repeated notification and misconduct |

## 11. Appendices

- Full copies of all evidence listed in the index

- Timeline and documentation from Tricon file

# And if that wasn't enough!!!

# 📘 Dossier Title:

**Illegal Seizure and Judicial Inaction – 100 Hectares in Luís Eduardo Magalhães, Bahia**

# 1. Executive Summary

We are the lawful owners of a 100-hectare industrial parcel located in Luís Eduardo Magalhães, Bahia, Brazil. The land was acquired in full, with cash, from Mr. Castillo. Despite the legality and registration of our ownership, Mr. Castillo illegally reoccupied the property and has remained in unlawful possession for over six years.

We have been denied all access to the land, while he has profited from soy cultivation. Despite numerous legal filings and police reports, the Brazilian judicial system has failed to act. The complete lack of enforcement, despite overwhelming documentation, suggests potential judicial corruption and political interference.

---

## 2. Property History and Legal Context

- Property purchased by BIOCLEAN ENERGY BRASIL S.A. on **28 December 2007**, paid in full.

- In **2011**, the Municipality attempted to expropriate the land via **Decree 2070/2011**, citing social interest.

- That decree **expired in 2013**, and a new decree (**3.236/2014**) was issued declaring the area of public utility.

- In 2014, BIOCLEAN formally contested the action, with valuations and objections submitted to the municipal government.

**Relevant legal outcomes:**

- No formal expropriation ever completed.

- Our ownership remains intact and fully documented.

- However, Mr. Castillo after being paid and transferring title illegally reentered and occupied the land.

---

## 3. Ongoing Damages

- Over six years of **illegal occupation** by Mr. Castillo.

- **Loss of access** to a property worth **R$80-100 million (~USD $20 million)**.

- **Ongoing soy cultivation** and commercial use without our consent.

- Total **failure by courts and police to intervene**, despite formal proceedings.

- **Suspected political protection and judicial manipulation** to stall or nullify our claims.

---

## 4. Request for Action

We respectfully request that this matter be included in any review of:

- Judicial corruption in Brazil

- Illegal land seizure and civil code violations

- Investor protection breaches

- Human rights violations tied to judicial obstruction

This case represents a clear breakdown of legal process and an alarming example of systemic impunity.

---

Translation and Summary of emails to Tricon Energy.

See Exhibit 6 Attached.

## TRICON SUMMARY

I, John Kaweske, am the President Director of the company Bio Petro Produção e Comercialização de Biocombustíveis Ltda. The company's Articles of Association require my approval for any of the company's business dealings.

**November 1, 2016**

My first contact with Tricon. Email (sending a copy of the articles of association) and a phone call. In this email, I copied the company's lawyer (Rodrigo Palaia) informing him of the possibility of a commercial relationship with the company.

The email was sent to Cleber Fernandes and I spoke with him on the same date.

He informed me that other people were calling on behalf of the company (Bio Petro Produção) and I informed him that no one other than myself should be authorizing purchases of Methanol. He informed me that I should also speak with Marina Nicolia at Tricon.

**November 2, 2016**

I sent an email with a copy of the articles of association and spoke with Marina Nicolia at Tricon. I made it clear in the email and in conversations that third parties cannot make purchases of Methanol in the name of our company.

**November 4, 2016**

I called and sent an email to Marina Nicolia with my contact telephone number.

**January 19, 2017**

I was informed by the National Petroleum Agency (ANP) that purchases were being made in the company's name without my authorization. I called Tricon and asked who the responsible director was. I was told to speak with Mr. Fratta. I spoke with and sent an email to Mr. Fratta asking for copies of the invoices for the product that was purchased and advising one more person that Methanol purchases cannot be made in the name of Bio Petro without my authorization. The request was ignored by Tricon.

**January 25, 2017**

The company's (Bio Petro) lawyer sent an email and a letter (LEGAL NOTIFICATION) via SEDEX notifying 4 people at Tricon that purchases of Methanol were being made without my authorization. There was no response.

**July 11, 2017**

I never imagined that Tricon was still illegally selling methanol to Bio Petro. I was informed when I called the National Petroleum Agency. I got tired of asking the company in Brazil as I had no results previously. I contacted the US headquarters. I informed the directors.

**July 16, 2017**

I received news in writing from the headquarters that they will stop the sales of methanol to Bio Petro.

## Email Correspondence

**Email 1**

- **From:** John Kaweske jkaweske@me.com
- **Sent:** Tuesday, November 1, 2016 12:10 PM
- **To:** 'fernandesc@triconenergy.com'
- **Cc:** 'Rodrigo Palaia'
- **Subject:** Bio Petro Articles of Association
- **Attachments:** BPP - 4ª acs.pdf
- **Importance:** High

Dear Fernando,

Attached is a copy of Bio Petro's articles of association. I am aware that several groups are contacting TRICON Energy saying that they represent Bio Petro Produção e Comercialização de Combustíveis, LTDA.

None of these groups are authorized to negotiate or purchase Methanol on behalf of Bio Petro. The only person who can make this purchase is me, John Kaweske, President Director.

I am interested in creating a direct business relationship with TRICON and as I am in the USA I am talking with your Houston office to visit next week. If you have time to talk today or tomorrow let me know.

Regards,

John Kaweske President Director Bio Petro Produção

**Email 2**

- **From:** Cleber Fernandes da Silva [mailto:fernandesc@triconenergy.com]
- **Sent:** Tuesday, November 1, 2016 2:14 PM
- **To:** John Kaweske jkaweske@me.com
- **Cc:** 'Rodrigo Palaia' rodrigopalaia.adv@outlook.com; Marina Nicolia nicoliam@triconenergy.com
- **Subject:** Re: Bio Petro Articles of Association

Hello John, good afternoon!

First, I want to thank you for your phone call and clarifications...

Indeed, 2 channels for Methanol purchases for Bio Petro were established, however, by Tricon's policy, we do not establish 2 channels for the same client, and, in this case, the person responsible for the Bio Petro account is Marina Nicolia, whom I am copying.

Please, if possible, send us your telephone contacts, as Marina will contact you promptly.

A hug,

Cleber Fernandes da Silva Sales

**Email 3**

- **From:** John Kaweske jkaweske@me.com
- **Sent:** Wednesday, November 2, 2016 5:13 PM
- **To:** 'Marina Nicolia'
- **Cc:** 'reyalcool@gmail.com'; 'Cleber Fernandes da Silva'; 'Rodrigo Palaia'
- **Subject:** RE: Bio Petro Articles of Association

Dear Marina,

Thank you very much for your attention in formalizing and establishing this commercial relationship for our company. I thank you in advance for the confidentiality of our commercial discussions, I would like it to continue this way for the better success of the company.

Reynaldo Ramalhoso, the company's Commercial Director will contact you tomorrow.

He is the only one authorized by the company Bio Petro to negotiate and close deals.

Any questions I will be available to clarify.

Regards,

John Kaweske President Director Bio Petro

**Email 4**

- **From:** Marina Nicolia [mailto:nicoliam@triconenergy.com]
- **Sent:** Thursday, November 3, 2016 6:09 AM
- **To:** John Kaweske jkaweske@me.com
- **Cc:** reyalcool@gmail.com; 'Rodrigo Palaia' rodrigopalaia.adv@outlook.com
- **Subject:** RE: Bio Petro Articles of Association

Good morning, John.

It's a great pleasure to speak with you.

Could you give me a phone number so I can talk to you?! My cell is +55 11 98790.0171

Thank you very much!

Regards,

Marina Nicolia Methanol

**Email 5**

- **From:** John Kaweske jkaweske@me.com
- **Sent:** Friday, November 4, 2016 11:05 AM
- **To:** 'Marina Nicolia'
- **Cc:** 'reyalcool@gmail.com'
- **Subject:** RE: Bio Petro Articles of Association

Dear Marina,

My Brazilian phone works for calls here in the USA as well.

Tel. +55 11 32308401

Any questions I am at your disposal.

Regards,

John Kaweske

**Email 6 (Forwarded Chain)**

- **From:** John Kaweske jkaweske@me.com
- **Sent:** Tuesday, January 24, 2017 9:28 AM
- **To:** 'rodrigopalaia.adv@outlook.com'

- **Subject:** FW: Tricon
- **From:** John Kaweske [mailto:jk@biopetrobr.com]
- **Sent:** Thursday, January 19, 2017 1:17 PM
- **To:** frattar@triconenergy.com
- **Cc:** rr@biopetrobr.com

Dear Mr. Fratta,

Thank you for your time today.

As per our conversation, I was surprised to hear from ANP that Methanol was withdrawn in our name (Bio Petro). Especially as I was in contact with Marina and Cleber last year advising that only I and our Commercial Director can close purchases with your company.

No purchase was authorized by me (John Kaweske).

Please send me copies of the invoices and other documentation about these purchases.

Thank you very much,

Regards,

John Kaweske Dir. President Bio Petro 11 32308401

**Email 7 (Legal Notification)**

- **From:** Rodrigo Palaia rodrigopalaia.adv@outlook.com
- **Sent:** Wednesday, January 25, 2017 5:24 PM
- **To:** frattar@triconenergy.com; fernandesc@triconenergy.com; nicoliam@triconenergy.com; antonio.santos@triconenergy.com
- **Cc:** jkaweske@me.com
- **Subject:** Notification of Clarification
- **Attachments:** contrato social bio petro produção.pdf; Notificacao.pdf

Dear Sirs, good night!

We are forwarding, in an attachment, a communication of clarification and knowledge, due to the facts that we became aware of are occurring without the authorization of the responsible director of Biopetro Produção e Comercialização de Biocombustíveis ltda. Said documentation aims solely to bring to Your Lordships' knowledge the facts in terms of the question of a third company having leased the Biopetro plant, as well as there being existing judicial demands that deny this fact about the possession of the third person in the establishment of Biopetro, making it illicit to acquire any petroleum derivative, without the consent of the President-Director regularly constituted in the articles of association that also follows in annex, and which this notification subscribes.

Therefore, we place ourselves at your disposal for any clarifications that may be necessary.

Cordially;

Obs: a copy of the notification and the articles of association was sent by postal mail to the Tricon address.

Rodrigo Palaia C. Piccolo Advogado/Lawyer

## Legal Notification Document (Summary of Content)

**To:** TRICON ENERGY DO BRASIL COMÉRCIO DE PRODUTOS QUÍMICOS

**From:** BIO PETRO PRODUÇÃO E COMERCIALIZAÇÃO DE BIOCOMBUSTÍVEIS LTDA

The document notifies Tricon that unauthorized companies or individuals are using Bio Petro's name to purchase METANOL. It states that any commercial transaction involving petroleum derivatives requires the authorization of the president director, John Kaweske. It mentions a legal dispute (case no. 1007281-20.2016.8.26.0037) regarding the nullity of a lease agreement with a third party, UNIBIO HOLD APOIO ADMINISTRATIVO LTDA, and that this third party is not authorized to act on behalf of Bio Petro. It concludes by stating that Bio Petro will remain in possession of the plant.

*(Signed by John Kaweske, President-Director, and Rodrigo P. G. Piccolo, Lawyer)*

## Final Correspondence to US Headquarters

**Email 8**

- **From:** jk@biopetrobr.com
- **Sent:** Tuesday, July 11, 2017 1:47 PM
- **To:** 'gomesl@triconenergy.com'; 'wendelc@triconenergy.com'; 'torrasi@triconenergy.com'; 'reszlert@triconenergy.com'; 'elwoodb@triconenergy.com'
- **Subject:** METHANOL / BRAZIL / ILLEGAL SALES
- **Attachments:** Tricon Notification USA.pdf

Dear Mr. Ignacio Torras, Thomas Reszler, Christian Wendel and Bryan Elwood:

Please find the attached correspondence.

I look forward to hearing from a member of your team immediately.

Kind regards,

John Kaweske 303-210-2149

**Attached Letter (July 11, 2017)**

**To:** TRICON ENERGY 777 POST OAK BLVD SUITE 550 HOUSTON, TX 77056

**ATTN:** IGNACIO TORRAS, THOMAS RESZLER, CHRISTIAN WENDEL & BRYAN ELWOOD

**RE: ILLEGAL METHANOL SALES IN BRAZIL**

GENTLEMEN:

I am writing to afford your company the opportunity to avoid litigation and possible criminal charges in Brazil.

As you can see from the attached correspondence, I have attempted to stop the illegal sale of Methanol by your Brazil unit on several occasions. Even going to the extent of my lawyer drafting correspondence while attaching our "Contrato Social", (Legal document similar to the articles of incorporation and bylaws in the United States).

For the record, I am the President and controlling shareholder of Bio Petro Produção e Comercialização de Combustíveis, LTDA, ("Bio Petro") in Brazil. We are an authorized producer of Biodiesel in Brazil. I have not signed nor authorized a single purchase of Methanol from your Brazil Unit.

Even after sending correspondence from my lawyer, your Brazil Unit continues to make illegal sales of Methanol using my Company's licenses with ANP (Agencia Nacional de Petroleo) for its own gain without regard to the fact I have not authorized any purchases of Methanol from your Brazil Unit.

I have been told from other sources (unverified) that this is standard practice of your Brazil Unit to illegally sell methanol into the Brazil marker which is being diverted to gasoline stations with the knowledge and kickbacks being paid to executives at Tricon in Brazil.

In Brazil, there exists a price disparity between Methanol and ethanol and such has created a black market for profiteers acting illegally and distributing Methanol to gasoline stations and subsequently gasoline stations selling to the general public.

From my sources in Brazil (unverified) your Brazil unit is the leader in this black market activity. I also understand from credible government sources that a crackdown on this type of illegal activity is about to commence and just as in the political situation in Brazil, heads will roll from the top down.

I would like your Company to immediately stop the sale of Methanol that has been occurring without my authorization to Bio Petro.

Should I not receive confirmation that all Methanol sales have stopped to Bio Petro within 48 hours from receipt of this letter I will be contacting the public authorities in Brazil and commencing criminal and civil litigation.

Should you desire to speak to me my US telephone number is 303-210-2149.

With Kind regards, Sincerely, John Kaweske President BIO PETRO

**Email 9 (Response)**

- **From:** Bryan Elwood elwoodb@triconenergy.com
- **Sent:** Sunday, July 16, 2017 4:01 PM
- **To:** jk@biopetrobr.com
- **Subject:** Re: METHANOL / BRAZIL / ILLEGAL SALES

Dear Mr. Kaweske,

This just to let you know that, although Tricon is certain that it has done nothing wrong, to avoid any confusion with you, Tricon will no longer be doing business with your company.

Regards,

Bryan.