UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JOHN KAWESKE,<br><br>                    Plaintiff,<br><br>     -against-<br><br>BANCO BRADESCO S.A., et al.,<br><br>                    Defendants. | 25-CV-06588 (JLR) (RFT)<br><br>**ORDER** |

**ROBYN F. TARNOFSKY, United States Magistrate Judge:**

Pending before the Court is Plaintiff's motion to recuse me from this case. (ECF 100, Pl. Recusal Mot.) Plaintiff also seeks, among other relief, disclosure of information about my relationships with a variety of individuals and entities; withdrawal of the reference to me; a stay of all proceedings, including the deadline for Plaintiff's opposition to the motions to dismiss; vacatur of all orders I have issued. For the reasons set forth below, the motion is **DENIED**.

## LEGAL STANDARDS

"Recusal motions are committed to the discretion of the judge who is being asked to recuse himself." *Shukla v. Deloitte Consulting LLP*, No. 19-CV-10578 (AJN) (SDA), 2020 WL 5894078, at *1 (S.D.N.Y. Oct. 5, 2020); *see also United States v. Lovaglia,* 954 F.2d 811, 815 (2d Cir. 1992).[1] Because recusal "necessarily results in a waste of the judicial resources which have already been invested in the proceeding," *In re Int'l Bus. Machs. Corp.*, 618 F.2d 923, 933 (2d Cir. 1980), judges "ha[ve] an affirmative duty not to disqualify [themselves] unnecessarily." *Shukla*, 2020 WL 5894078, at *1. "[A] judge is as much obliged not to recuse himself when it is not called for as he is obliged to when it is." *In re Drexel Burnham Lambert Inc*., 861 F.2d 1307, 1312

---

[1]      This order omits internal quotation marks, citations, and alterations from quoted text.

(2d Cir. 1988); *see also Weston Cap. Advisors, Inc. v. PT Bank Mutiara Tbk.*, No. 13-CV-6945

(PAC), 2019 WL 6002221, at *3 (S.D.N.Y. Sept. 20, 2019). "[O]therwise, recusal motions would

become a tool for judge-shopping and impeding the administration of justice . . . , [a]nd Section

455 is not intended to give litigants a veto power over sitting judges, or a vehicle for obtaining a

judge of their choice." *Saleh v. Pastore*, No. 19-CV-11799 (KPF), 2021 WL 1177533, at *3 (S.D.N.Y.

Mar. 28, 2021).

A judge "shall disqualify himself in any proceeding in which his impartiality might

reasonably be questioned." 28 U.S.C. § 455(a). "The inquiry is whether an objective,

disinterested observer fully informed of the underlying facts would entertain significant doubt

that justice would be done absent recusal." *Rubin v. N.Y.C. Bd. of Educ.*, No. 20-CV-10208 (LGS),

2023 WL 5336749, at *2 (S.D.N.Y. June 16, 2023) (quoting *Lovaglia*, 954 F.2d at 815); *see also*

*United States v. Carlton*, 534 F.3d 97, 100 (2d Cir. 2008); *United States v. Yousef*, 327 F.3d 56, 169

(2d Cir. 2003).  A judge also is required to recuse herself  where, among other considerations,

"[s]he has a personal bias or prejudice concerning a party, or personal knowledge of disputed

evidentiary facts concerning the proceeding[.]" 28 U.S.C. § 455(b)(1); *see also United States v.*

*Bayless*, 201 F.3d 116, 126 (2d Cir. 2000). And a judge should recuse herself when the party has

filed a "timely and sufficient affidavit" showing that she "has a personal bias or prejudice either

against [the party] or in favor of any adverse party." 28 U.S.C. § 144. The Court's analysis is the

same under Sections 144 and 455(b)(1). *See Apple v. Jewish Hosp. & Med. Ctr.*, 829 F.2d 326,

333 (2d Cir. 1987).

"To be disqualifying under § 455, the alleged bias and prejudice must stem from an

extrajudicial source and result in an opinion on the merits on some basis other than what the

judge has learned from his participation in the case." *S.E.C. v. Razmilovic*, 738 F.3d 14, 29 (2d Cir. 2013), *as amended* (Nov. 26, 2013); *see also United States v. Grinnell Corp.,* 384 U.S. 563, 583 (1966); *Lewis v. Tuscan Dairy Farms, Inc.*, 25 F.3d 1138, 1141 (2d Cir. 1994). "[J]udicial rulings alone almost never constitute a valid basis for a bias or partiality motion." *Liteky v. United States*, 510 U.S. 540, 555 (1994); *see also Chen v. Chen Qualified Settlement Fund*, 552 F.3d 218, 227 (2d Cir. 2009) ("Generally, claims of judicial bias must be based on extrajudicial matters, and adverse rulings, without more, will rarely suffice to provide a reasonable basis for questioning a judge's impartiality."); *Fulton v. Robinson*, 289 F.3d 188, 199 (2d Cir. 2002) (affirming denial of a recusal motion filed by the plaintiff where the judge had ruled against him on all his motions); *Pri-har v. United States*, 83 F. Supp. 2d 393, 397 (S.D.N.Y. 2000) ("[I]t is well-settled that a judge's adverse rulings and decisions against a party almost never are a valid basis for a party to seek disqualification based on bias or impartiality."). "Events occurring in the course of judicial proceedings generally do not constitute a basis for recusal unless they indicate that the judge has a deep-seated favoritism or antagonism that would make fair judgment impossible." *United States v. Conte*, 99 F.3d 60, 65 (2d Cir. 1996); *see also Liteky*, 510 U.S. at 555.

## ANALYSIS

Plaintiff argues that I should recuse myself because an observer might reasonably question my impartiality based on Plaintiff's allegation that "undisclosed public-record relationships connect[ ] [my] household and [my] former senior institutional superior to defense-side counsel." (ECF100, Pl. Recusal Mot. at 6.) Plaintiff says that Tricon's counsel, Louis Solomon of the Reed Smith firm, has a familial relationship to Beth Goldman, who was the attorney in charge of the New York Legal Assistance Group ("NYLAG") for much of the time that I

was the head of the NYLAG Legal Clinic for Pro Se Litigants in the Southern District of New York. (*See id.* at 8.) Plaintiff also reports that my husband, an attorney at the Cravath firm, is co-counsel in an unrelated matter with the Quinn Emanuel firm, which represents Bradesco. (*See id.*) Plaintiff notes that "sophisticated corporate defendants . . . retained New York counsel after the magistrate assignment was publicly visible on the docket" and speculates that the probability that both the lawyers for Tricon and for Bradesco would have relationships with me is below one percent. (*Id.* at 6.) And Plaintiff asserts that there is a "broader NYLAG and Legal Aid Society institutional ecosystem that places [my] household, Cravath, Reed Smith, and Quinn Emanuel or its affiliated foundation in overlapping philanthropic, pro bono, and governance roles." (*Id.* at 8-9.) Specifically, Plaintiff points out that Ms. Goldman was NYLAG's attorney in charge and, along with Mr. Solomon, donated funds to NYLAG in 2019; that I was the head of the NYLAG Pro Se Clinic and have donated funds to NYLAG; and that my husband has an active pro bono practice and serves on the boards of Volunteers of Legal Service and the Legal Aid Society. (*See id.* at 15-16.) Plaintiff concludes that "repeated overlap among NYLAG, the SDNY Pro Se Clinic, Solomon, Goldman, [my husband], and New York access-to-justice institutions" reinforces the need for disclosure and recusal review. (*Id.* at 16.) Plaintiff argues that these three issues should not be considered in isolation, and that the appearance of impropriety is heightened by the confluence of these issues. (*See id.*)

I disagree that an "objective, disinterested observer fully informed of the underlying facts would entertain significant doubt that justice would be done absent recusal," *Rubin,* 2023 WL 5336749, at *2 (quoting *Lovaglia*, 954 F.2d at 815). I have created and regularly update a conflict screening list. Neither Mr. Solomon nor the Quinn Emanuel firm is on that list, because

4

neither I nor my husband nor our minor children has financial ties to Mr. Solomon or a financial interest in the Quinn Emanuel firm; because I have no personal or professional relationship with Mr. Solomon, and I therefore would have no reason to place him on my screening list; and because, while I have professional relationships with some individual Quinn Emanuel lawyers, such as through bar committees, there are no Quinn Emanuel lawyers with whom I have a sufficiently close personal or professional relationship to warrant screening and disclosure.

As to Mr. Solomon, I do not know whether he has a relationship to Ms. Goldman, who was the attorney in charge at NYLAG for most of the seven years that I worked there and who, along with NYLAG's general counsel, interviewed me when I was applying for a position there. While I was employed at NYLAG, I attended various meetings with Ms. Goldman but reported directly to NYLAG's general counsel and not to her. Characterizing my professional relationship with Ms. Goldman as "career-defining," as Plaintiff does (ECF 100, Pl. Recusal Mot. at 12), is an overstatement; and while I respect Ms. Goldman and we have a cordial relationship, we are not close friends.

I recall Ms. Goldman mentioning that her spouse was a lawyer, but I do not believe she ever mentioned his name or the type of work he did. I do not recall ever meeting Mr. Solomon before he appeared in this case. I could not disclose what I did not know and had no basis to know or to inquire into.

Moreover, even if I were acquainted with Mr. Solomon, there would be no basis for recusal unless Plaintiff had a factual reason to argue that I was biased. It is well settled that a judge's "acquaintance with a party, an attorney or a witness, without some factual allegation of bias or prejudice, is not sufficient to warrant recusal." *Bailey v. Broder*, No. 94-CV-2394 (CSH),

5

1997 WL 73717, at *3 (S.D.N.Y. Feb. 20, 1997); *see also Minpeco S.A. v. Conticommodity Servs., Inc.*, No. 82-CV-7619 (MEL), 1984 WL 658, at *2 n.5 (S.D.N.Y. July 25, 1984) (pointing out that there is a long line of decisions rejecting recusal where the judge is a friend or acquaintance of one party's attorney). Relationships far closer than my non-existent one with Mr. Solomon have been held not to merit recusal. *See, e.g.*, *Riola v. Long Island Cycle & Marine, Inc.*, 352 F. Supp. 2d 365, 366-67 (E.D.N.Y. 2005) (denying a recusal motion where the judge and lawyer were colleagues at the U.S. Attorney's Office); *Gardella v. Int'l Paper Co.*, No. 04-CV-0935, 2004 WL 2516189, at *2 (D. Conn. Nov. 3, 2004) (declining to recuse where the judge had previously worked at the law firm representing the defendants); *In re Cooke*, 160 B.R. 701, 707 (Bankr. D. Conn. 1993) ("The fact that a judge's former law clerk is representing a party in a case before the judge is not sufficient to make a reasonable person question the judge's impartiality.").

As to Quinn Emanuel, my husband is co-counsel with that firm on an unrelated case; he is co-counsel with dozens of firms on unrelated cases. Plaintiff asserts that the success of my husband and Quinn Emanuel in the unrelated case "advances the same client-side litigation objective and carries reputational and professional value for the attorneys and firms involved" and that "[a] reasonable observer would question impartiality where counsel appearing before the Court is actively aligned in another significant matter with the judge's spouse and his firm." (*Id.* at 15.) However, the Second Circuit Court of Appeals routinely holds that professional and institutional relationships much closer than those posited by Plaintiff here do not warrant recusal: indeed, "[t]he prior representation of a party by a judge or his firm with regard to a matter unrelated to litigation before him does not automatically require recusal." *Nat'l Auto Brokers Corp. v. Gen. Motors Corp.*, 572 F.2d 953, 958 (2d Cir. 1978) (citing cases and holding

6

that nothing in the representation of the judge's prior firm in "wholly unrelated matters" suggests that the judge should have "recused himself as a matter of discretion"), *cert. denied*, 439 U.S. 1072 (1979); *see also Benun v. Allstate Ins. Co.*, 225 F.3d 645 (2d Cir. 2000) (summary order) (same).

As to what Plaintiff characterizes as institutional overlap, the implication of Plaintiff's argument is that I should recuse myself in any case where a lawyer appearing in the case had ties to NYLAG (because of my former role there) or to the Legal Aid Society or Volunteers of Legal Service (because of my husband's role at those organizations) or even to other legal services organizations (because of some kind of public interest "ecosystem"). Judge Jose Cabranes highlighted the fundamental flaw in this argument when, after perceived unfavorable discovery rulings, a plaintiff sought Judge Cabranes' recusal due to the affiliation with Yale University of Judge Cabranes and his wife:

> Plaintiff's theory of recusal is untenable because, among other things, its application leads to obviously absurd results . . . . Plaintiff's argument would require disqualification of a judge who is a Yale trustee or teacher or who is married to a Yale teacher in all cases where any Yale alumnus surfaces as a party or as an attorney, or perhaps even as a witness. The principle of plaintiff's argument would of course apply to any judge who serves, or who has a spouse who serves, any educational institution as a trustee or teacher.

*McCann v. Commc'ns Design Corp.*, 775 F. Supp. 1535, 1543 (D. Conn. 1991).

Plaintiff suggests that my decision to recuse myself in the unrelated case of *Sorial* v. *Robinhood Financial* demonstrates that I should have realized there was a need for screening and disclosure here. (*See* ECF 100, Pl. Recusal Mot. at 24.) However, the recusal issues in *Sorial* are distinct from the issues raised by Plaintiff. The *Sorial* defendant was a client of my husband's firm to which my husband provided services, and I had believed when the matter was first

referred to me that disclosure and recusal were not warranted because the revenues received from the client were not substantial relative to the firm's total revenues; after the *Sorial* plaintiffs sought my recusal, I reconsidered my position because the revenues received by my husband's firm from the *Sorial* defendant could fairly be seen as substantial in an absolute sense even if not in a relative sense. *See Sorial v. Robinhood Fin., LLC,* No. 24-CV-2752 (JLR) (RFT), 2024 WL 4308357, at *3 (S.D.N.Y. Sept. 26, 2024). Plaintiff has not suggested that any Defendant is a client of my husband and/or his firm. To the extent that *Sorial* has any relevance to this matter, it shows that, when a party raises valid concerns about appearances of impropriety, I do not hesitate to recuse myself and vacate my prior orders.

Plaintiff also argues that I treated his discovery positions "aggressively" while giving counsel for Defendants "substantial latitude" at a discovery conference. (ECF 100, Pl. Recusal Mot. at 19.) Plaintiff says that I "repeatedly framed the dispute through defense-favorable jurisdictional skepticism." (*Id.*) Plaintiff asserts that there was "an asymmetrical conference dynamic in which Plaintiff appeared to be facing not ordinary adversarial opposition, but a bench-and-defense alignment against jurisdictional discovery." (*Id.*) These criticisms are a roundabout way of contending that I am biased against Plaintiff because I ruled against him on a discovery dispute. Plaintiff has not met his "substantial" burden of demonstrating that I am biased against him, *Metro. Opera Ass'n*, 332 F. Supp. 2d at 670. The alleged bias he adverts to comes not from any extrajudicial source, but instead arises out of my discovery rulings in this case. However, the law is clear that "judicial rulings alone almost never constitute a valid basis for a bias or partiality motion." *Liteky,* 510 U.S. at 555; *Chen*, 552 F.3d at 227; *Fulton*, 289 F.3d at 199; *Pri-har*, 83 F. Supp. 2d at 397.

Plaintiff also notes that, during the conference, he observed "familiar and collegial interactions" between me and counsel for Defendants. (ECF 100, Pl. Recusal Mot. at 19.) I disagree that counsel demonstrated any familiarity toward me, but I make every effort to treat everyone who appears in my courtroom – including pro se litigants – in a collegial manner, and so I do not see any nefarious inferences to be drawn from collegiality between myself and counsel during the discovery conference.

## **CONCLUSION**

For the reasons set forth above, Plaintiff's motion for my recusal (ECF 100) is **DENIED**. The Clerk of Court is respectfully requested to terminate ECF 100.

DATED:  July 10, 2026
        New York, NY

SO ORDERED.

_____
**ROBYN F. TARNOFSKY**
**United States Magistrate Judge**