UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JOHN KAWESKE,

Plaintiff,

-against-

BANCO BRADESCO S.A., et al.,

Defendants.

Case No. 1:25-cv-06588 (JLR) (RFT)

**OPINION AND ORDER**

JENNIFER L. ROCHON, United States District Judge:

Plaintiff John Kaweske ("Plaintiff") objects under Federal Rule of Civil Procedure ("Rule") 72(a) to Magistrate Judge Tarnofsky's orders dated May 29, 2026, Dkt. 67 (the "May Order"), June 29, 2026, Dkt. 97 (the "June Order"), and July 10, 2026, Dkt. 109 (the "July Order"). *See* Dkt. 81 ("May Order Obj."); Dkt. 112 ("May Order Suppl. Obj."); Dkt. 101 ("June Order Obj.");[1] Dkt. 111 ("July Order Obj."). For the following reasons, Plaintiff's objections to all three orders are OVERRULED.

## BACKGROUND

### I. Factual Background

Plaintiff, proceeding *pro se*, brings this civil RICO action against Defendants based on an alleged cross-border scheme involving Plaintiff's Brazilian biodiesel enterprise, Bio Petro Produção e Comercialização de Biocombustíveis Ltda. ("Bio Petro"). Dkt. 21 ("SAC" or the "Second Amended Complaint") ¶¶ 3-5, 9, 14. Plaintiff is the "founder" of and "a principal investor" in Bio Petro's parent company and served as Bio Petro's Chief Executive Officer with

[1] Dockets 101 and 110 are duplicate docket entries of the same objection. *See* Dkts. 101, 110. For simplicity, the Court refers to the first-filed entry.

"co-signature authority over all . . . binding corporate acts" during the relevant period. *Id.* ¶¶ 9, 14.

According to the Second Amended Complaint, the alleged scheme included nineteen unauthorized methanol-procurement cycles involving Bio Petro in Brazil between November 2016 and July 2017. *Id.* ¶¶ 3, 30(a)-31. Specifically, Plaintiff alleges that third parties made deposits in Brazilian reais into a Banco Bradesco S.A. ("Bradesco") account belonging to Tricon Energy do Brasil Comércio de Produtos Químicos Ltda. ("Tricon Brasil"), and that those deposits were connected to unauthorized purchases made using Bio Petro's name and authority. *Id.* ¶¶ 3, 5, 35-42. Plaintiff asserts civil RICO claims under 18 U.S.C. §§ 1962(c) and (d) against Bradesco, Bradesco Securities Inc. ("BSI") (together, the "Bradesco Defendants"), Tricon Energy Inc. ("Tricon"), Tricon Energy Ltd. ("TEL"), Tricon Brasil (together, the "Tricon Defendants"), two individual defendants, and several Doe defendants. *See id.* at 1; Dkt. 31 at 2.

As relevant here, Plaintiff alleges that the transactions had connections to New York because Bradesco maintains a licensed New York branch; BSI operates in New York; and, on information and belief, pricing, settlement, clearing, correspondent-banking, records-access, or compliance functions associated with the challenged transactions may have involved New York. SAC ¶¶ 12-12(b), 13-13(b). Plaintiff also invokes 18 U.S.C. § 1965 ("Section 1965") as a potential basis for personal jurisdiction in connection with his RICO claims. *Id.* ¶ 13(d). Under Section 1965, if at least one defendant is properly before the Court in a RICO action under Section 1965(a), Section 1965(b) permits nationwide service on additional parties when the "'ends of justice' so require." *PT United Can Co. v. Crown Cork & Seal Co.*, 138 F.3d 65, 71 (2d Cir. 1998) (quoting 18 U.S.C. § 1965(b)); *see also Vice v. Nat'l Collegiate Student Loan Tr. 2004-1*, No. 23-cv-06287 (PGG) (BCM), 2025 WL 4671151, at *15 (S.D.N.Y. Aug. 29, 2025) ("[O]nce personal jurisdiction is established through traditional means over at least one

defendant, § 1965(b) authorizes the court's assertion of nationwide personal jurisdiction over other parties, including co-defendants and third-party defendants, where the ends of justice so require." (quotation marks and citation omitted)), *report and recommendation adopted*, 2026 WL 867096 (S.D.N.Y. Mar. 30, 2026); *but see Elsevier, Inc. v. Grossman*, 77 F. Supp. 3d 331, 343 (S.D.N.Y. 2015) ("[A] district court relying on § 1965 may only exert this jurisdictional pull over defendants residing in any other district, not foreign defendants." (quotation marks and citation omitted)).

## II. Procedural History

On March 3, 2026, the Court referred this case to Magistrate Judge Tarnofsky for general pretrial supervision, including discovery and nondispositive pretrial motions. *See* Dkt. 17. After Tricon and the Bradesco Defendants moved to dismiss the Second Amended Complaint, Dkts. 37, 47, Plaintiff sought, among other relief, jurisdictional discovery before his deadline to oppose those motions. *See* Dkts. 55, 60. On May 20, 2026, the Court granted Plaintiff's request for "limited jurisdictional discovery," extended his opposition deadline, and left supervision of that discovery to Magistrate Judge Tarnofsky. Dkt. 64 at 1.

Following a May 27, 2026 discovery conference, Dkt. 121 ("May Conf. Tr."), Magistrate Judge Tarnofsky issued the May Order, which addressed both service of process and jurisdictional discovery. As to service, Magistrate Judge Tarnofsky deferred to this Court on issues that overlapped with the pending motions to dismiss, while extending Plaintiff's deadline to serve certain Defendants and directing the Clerk of Court to reissue summonses as to the same. May Order at 1-2, 4. With respect to jurisdictional discovery, Magistrate Judge Tarnofsky ordered the Bradesco Defendants to "produce documents sufficient to show the legal status of Bradesco's New York branch office, and in particular, whether the New York branch office is a separate legal entity from Bradesco," and ordered the Tricon Defendants to "produce

documents sufficient to show [their] principal place[s] of business and place[s] of incorporation." *Id.* at 3. She denied Plaintiff's request "for wide-ranging discovery" into Defendants' New York contacts but required Defendants to produce "documents sufficient to show any connections to New York of the 19 transactions at issue." *Id.* at 4. She also expressly permitted Plaintiff to "serve more targeted discovery requests" and established a meet-and-confer and motion-to-compel procedure for any ensuing disputes. *Id.*

Plaintiff thereafter filed a notice regarding the United States' designation of Primeiro Comando da Capital ("PCC") as a Foreign Terrorist Organization, which Plaintiff contended bore on his allegations that the asserted methanol-diversion scheme involved actors connected to PCC and on his requests for financial and compliance-related discovery. Dkt. 68 at 1-3; *see* SAC ¶¶ 6, 8(a). Magistrate Judge Tarnofsky construed the notice as seeking reconsideration of the scope of jurisdictional discovery. *See* Dkt. 70 at 1. She denied reconsideration on June 4, 2026, explaining that the later designation did not alter the assessment of general or specific personal jurisdiction, and reaffirmed the May Order's discovery directives. *See id.* at 1-2.

On June 8, 2026, Plaintiff submitted a letter indicating his intent to seek reconsideration of Magistrate Judge Tarnofsky's June 4 order affirming the May Order and to file a Rule 72(a) objection to the May Order itself. *See* Dkt. 71. Magistrate Judge Tarnofsky gave Plaintiff until June 22, 2026, to file a formal reconsideration motion. *See* Dkt. 82 at 1.

On June 12, 2026, Plaintiff timely objected to the May Order. *See* May Order Obj. Magistrate Judge Tarnofsky held that objection in abeyance pending Plaintiff filing his related motion for reconsideration. Dkt. 83 at 1. In so doing, Magistrate Judge Tarnofsky expressly permitted Plaintiff to supplement the objection within fourteen days after any decision on reconsideration. *Id.*

Plaintiff thereafter served additional requests on Defendants and then moved to compel further production. *See* Dkt. 73. Following another conference on June 25, 2026, Dkt. 123 ("June Conf. Tr."), Magistrate Judge Tarnofsky issued the June Order denying both Plaintiff's motion to compel and his request for reconsideration. June Order at 1, 5. In light of Plaintiff's *pro se* status, Magistrate Judge Tarnofsky treated Plaintiff's earlier letter relaying his intent to seek reconsideration as the reconsideration motion itself, despite Plaintiff not having filed a formal motion by the deadline she had set. *Id.* at 1 n.1. She concluded that Plaintiff had not shown that Defendants failed to comply with the May Order and that Plaintiff's proposed "conception of a transaction [fell] well outside the framework for specific jurisdiction established by governing caselaw." *Id.* at 2-4. The June Order also expressly addressed Section 1965 and concluded that the discovery already permitted was sufficient to test whether any Defendant could serve as an anchor defendant and, if so, whether jurisdiction could extend to other Defendants. *Id.* at 4. Plaintiff subsequently filed a timely objection to the June Order. *See* June Order Obj.

On July 6, 2026, Plaintiff moved for Magistrate Judge Tarnofsky's recusal, disclosure, withdrawal of the referral, a stay, and vacatur of her prior orders. Dkts. 99-100. Magistrate Judge Tarnofsky denied that motion in the July Order. July Order at 9. Plaintiff timely objected on July 14, 2026. July Order Obj. That same day, Plaintiff also filed his permitted supplement to the May Order objection, one day after the deadline, and moved under Rule 6(b)(1)(B) for leave to so file. *See* May Order Suppl. Obj. at 1 (citing delayed mail delivery and his consequently inaccurate deadline calculation as reason for untimely filing); *see also* Fed. R. Civ. P. 6(b)(1)(B) ("When an act may or must be done within a specified time, the court may, for good cause, extend the time . . . on motion made after the time has expired if the party failed to act because of excusable neglect."). Given the one-day delay, Plaintiff's explanation for that

delay, the absence of prejudice to Defendants, and Plaintiff's *pro se* status, the Court GRANTS that request and considers the supplement. *See Laina v. United Cerebral Palsy of N.Y.C., Inc.*, No. 11-cv-03983 (SJ) (MDG), 2012 WL 28291, at *2 (E.D.N.Y. Jan. 5, 2012) ("The Second Circuit has stated that 'excusable neglect' is a 'somewhat elastic concept' that may include omissions beyond the control of the untimely party as well as 'delays caused by inadvertence, mistake, or carelessness' where 'the delay [w]as not long, there is no prejudice to the opposing party, and the belated party's excuse has some merit.'" (alteration adopted) (quoting *LoSacco v. City of Middletown*, 71 F.3d 88, 93 (2d Cir. 1995))).

Defendants opposed the jurisdictional discovery objections, Dkt. 114 ("Tricon Opp."); Dkt. 116 ("Bradesco Opp."), and Plaintiff filed a consolidated reply, Dkt. 120 ("Reply"), requesting leave to do so to the extent necessary, Reply at 1. The Court GRANTS that request and considers Plaintiff's Reply.

Defendants separately opposed Plaintiff's recusal objection. Dkt. 118 ("Tricon Recusal Opp."); Dkt. 119 ("Bradesco Recusal Opp."). Plaintiff did not file a reply in support of that objection, nor do Rule 72(a) or Local Civil Rule 72.1(b)(1) provide for one as of right. *See Chelsea Hotel Owner LLC v. City of New York*, No. 21-cv-03982 (ALC) (RWL), 2025 WL 880530, at *1 n.1 (S.D.N.Y. Mar. 21, 2025) ("Rule 72(a) does not require the Court to permit a party to file a reply in support of an objection." (quotation marks and citation omitted)), *reconsideration denied*, 2025 WL 1603918 (S.D.N.Y. June 6, 2025); Loc. Civ. R. 72.1(b)(1) ("If a party files an objection to a magistrate judge's order, another party may serve and file a response to that objection."). The objections are therefore fully briefed.

## LEGAL STANDARD

In reviewing a magistrate judge's decision on nondispositive matters, the district court "must consider timely objections and modify or set aside any part of the order that is clearly

erroneous or is contrary to law." Fed. R. Civ. P. 72(a). "A finding is clearly erroneous only if the reviewing court is left with the definite and firm conviction that a mistake has been committed." *Clerveaux v. E. Ramapo Cent. Sch. Dist.*, 984 F.3d 213, 228 (2d Cir. 2021) (quotation marks and citation omitted). "A magistrate judge's ruling is contrary to law when 'it fails to apply or misapplies relevant statutes, case law, or rules of procedure.'" *RBG Mgmt. Corp. v. Vill. Super Mkt., Inc.*, No. 22-cv-07996 (JLR) (OTW), 2024 WL 1574026, at *1 (S.D.N.Y. Apr. 11, 2024) (quoting *Thai Lao Lignite (Thai.) Co. v. Gov't of Lao People's Democratic Republic*, 924 F. Supp. 2d 508, 512 (S.D.N.Y. 2013)). "It is well-settled that a magistrate judge's resolution of a nondispositive matter should be afforded substantial deference and may be overturned only if found to have been an abuse of discretion." *Id.* (quoting *Xie v. JPMorgan Chase Short-Term Disability Plan*, No. 15-cv-04546 (LGS), 2018 WL 501605, at *1 (S.D.N.Y. Jan. 19, 2018)). "Because the standard is highly deferential, the objector carries a heavy burden." *PWV Consultants LLC v. Chebil Realty LLC*, No. 20-cv-09030 (LTS), 2022 WL 562220, at *3 (S.D.N.Y. Feb. 24, 2022) (quotation marks and citation omitted).

"Matters concerning discovery generally are considered nondispositive of the litigation," *SEC v. Collector's Coffee Inc.*, No. 19-cv-04355 (VM), 2021 WL 391298, at *1 (S.D.N.Y. Feb. 4, 2021) (quotation marks omitted) (quoting *Thomas E. Hoar, Inc. v. Sara Lee Corp.*, 900 F.2d 522, 525 (2d Cir. 1990)), and "magistrate judges are afforded broad discretion in resolving [such] disputes," *Am. Stock Exch., LLC v. Mopex, Inc.*, 215 F.R.D. 87, 90 (S.D.N.Y. 2002). That principle applies with equal force to jurisdictional discovery. *See, e.g.*, *Rudersdal, EOOD v. Harris*, No. 18-cv-11072 (GHW), 2020 WL 5836517, at *3-4, *14 (S.D.N.Y. Sept. 30, 2020) (reviewing a magistrate judge's jurisdictional discovery ruling under Rule 72(a) and finding it neither clearly erroneous nor contrary to law); *Channel One Russia Worldwide v. Infomir LLC (www.infomirusa.com)*, No. 16-cv-01318 (GBD) (BCM), 2018 WL 4666069, at *4-5 (S.D.N.Y.

Sept. 28, 2018) (same); *Sparrow Fund Mgmt. LP v. MiMedx Grp., Inc.*, No. 18-cv-04921 (PGG) (KHP), 2020 WL 1330283, at *11 (S.D.N.Y. Mar. 22, 2020) (same).

The same deferential framework applies to a magistrate judge's denial of recusal. *See Rouviere v. DePuy Orthopaedics, Inc.*, No. 18-cv-04814 (GHW) (GS), 2024 WL 5088077, at *1 n.1 (S.D.N.Y. Dec. 12, 2024) ("Motions to recuse are non-dispositive."); *see, e.g.*, *Collector's Coffee*, 2021 WL 391298, at *2 (applying Rule 72(a) standard to recusal order); *Moore v. Publicis Groupe SA*, No. 11-cv-01279 (ALC) (AJP), 2012 WL 1446534, at *1 (S.D.N.Y. Apr. 26, 2012) (same); *Adams v. Co-Op City Dep't of Pub. Safety*, No. 21-cv-02675 (DEH) (BCM), 2024 WL 3459248, at *2 (S.D.N.Y. July 18, 2024) (same); *Febrianti v. NYC Health & Hosps.*, No. 23-cv-06175 (JLR), 2025 WL 294658, at *2 (S.D.N.Y. Jan. 24, 2025) (same).

Because Plaintiff proceeds *pro se*, the Court construes his submissions liberally and interprets them "to raise the strongest arguments that they suggest." *See Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (per curiam) (citation omitted). However, that solicitude does not alter the Rule 72(a) standard. The question before the Court remains whether the challenged rulings are clearly erroneous or contrary to law.

## DISCUSSION

### I. Plaintiff Has Not Shown That the May Order Was Clearly Erroneous or Contrary to Law

Plaintiff's objections to the May Order principally challenge the legal framework and scope of the jurisdictional discovery that Magistrate Judge Tarnofsky permitted. *See* May Order Obj. at 2-4. Specifically, Plaintiff argues that Magistrate Judge Tarnofsky's directive to Defendants to produce "documents sufficient to show any connections to New York of the 19 transactions at issue," May Order at 4, required production of "direct and indirect transaction-chain, payment-chain, source-of-funds, account-level, records-access, correspondent-banking,

foreign-exchange, United States dollar-clearing, SWIFT/Fedwire/CHIPS, compliance-review, AML/BSA, sanctions-screening, records-custody, proceeds-use, cargo-chain, and enterprise-infrastructure discovery." May Order Obj. at 11; *see also id.* at 5-6. He further contends that the May Order was contrary to law because it did not expressly analyze Section 1965, and that the RICO framework required broader discovery. *Id.* at 3-5. Neither objection meets Rule 72(a)'s demanding standard.

First, Magistrate Judge Tarnofsky acted well within her discretion in limiting jurisdictional discovery to facts bearing on the jurisdictional theories actually at issue. The May Order required production concerning Defendants' corporate domiciles and Bradesco's New York branch, and it required production sufficient to identify any New York connections of the nineteen challenged transactions themselves. *See* May Order at 3-4. It also invited more targeted requests and provided an expedited mechanism to bring any disputes back to the Court. *See id.* at 4. That is the type of tailored approach courts routinely employ when jurisdictional discovery is warranted. *See, e.g.*, *Remesh, Inc. v. Kantar LLC*, No. 25-cv-07700 (GHW) (SLC), 2026 WL 1179652, at *6-8 (S.D.N.Y. Apr. 30, 2026) (granting only targeted requests and a limited deposition while denying broader jurisdictional discovery); *Blockchain Mining Supply & Servs. Ltd. v. Super Crypto Mining, Inc.*, No. 18-cv-11099 (ALC), 2020 WL 7128968, at *2 (S.D.N.Y. Dec. 4, 2020) (explaining that jurisdictional discovery is not an invitation "to engage in an unfounded fishing expedition for jurisdictional facts" (citation omitted)). Rule 72(a) does not authorize this Court to replace that reasonable line-drawing with Plaintiff's preferred scope.

Plaintiff's reliance on the word "any" does not move the needle. *See* May Order Obj. at 3 ("The word 'any' requires discovery sufficient to test direct and indirect transaction-chain connections, including source of funds, depositor identity, third-party payment authorization, payment routing, correspondent banking, United States dollar clearing, SWIFT/Fedwire/CHIPS

activity, foreign exchange, downstream transfers, use of proceeds, records access, records custody, and compliance review."). Read in context, the May Order required production of "documents sufficient to show any connections to New York *of the 19 transactions at issue*," May Order at 4 (emphasis added); it did not authorize discovery into any conceivable New York connection of Defendants' operations. Indeed, the immediately preceding sentence denied Plaintiff's request for "wide-ranging discovery" into contacts that went beyond forum conduct connected to his alleged harm. *Id.* Plaintiff's statutory-interpretation cases concerning the breadth of the word "any," June Order Obj. at 4-5, do not transform a narrow discovery directive into an unlimited authorization. And, as the judicial officer who issued the directive and supervised the ensuing discovery, Magistrate Judge Tarnofsky was well positioned to explain what the order required when the parties later disputed its scope. Her June Order did exactly that.

Second, the omission of an express reference to Section 1965 in the May Order was not contrary to law. Section 1965 does not alter the standard for jurisdictional discovery. Rather, only after "personal jurisdiction based on minimum contacts is established as to at least one defendant" in a civil RICO action may Section 1965(b) support nationwide service on additional parties, where the "ends of justice" require. *PT United*, 138 F.3d at 71 (citation omitted). The discovery Magistrate Judge Tarnofsky permitted — corporate domicile and branch-status information together with evidence of New York connections of the challenged transactions — was directly relevant to whether such an anchor defendant might exist. Section 1965 does not require more.

The Bradesco Defendants' supplemental contentions regarding Bradesco's New York branch, *see* May Order Obj. at 6-7, likewise do not establish clear error. As noted, the May Order instructed the Bradesco Defendants to produce "documents sufficient to show . . . whether

[Bradesco's] New York branch office is a separate legal entity from Bradesco." May Order at 3. The need for that discovery was obviated by the Bradesco Defendants' subsequent representation that the New York branch "is not a separate legal entity from Bradesco." Dkt. 69 at 1. That fact does not itself establish that the New York branch received, processed, cleared, or otherwise participated in the nineteen Brazilian deposits, much less require discovery into every record or compliance system accessible by personnel in New York. Indeed, Plaintiff relayed his mistaken belief about the New York branch's relevance at the June 25, 2026 conference before Magistrate Judge Tarnofsky. *See* June Conf. Tr. at 13:7-15 (Plaintiff relaying his understanding that "someone can sit in [the] New York [branch] and access account information," and that "if those bank statements [related to the nineteen at-issue transactions] can be accessed from New York" then "[he] believe[s]" that "jurisdiction [is] established"). And Judge Tarnofsky clarified that that is simply not the law. *See id.* at 14:22-15:3 (Magistrate Judge Tarnofsky summarizing her understanding that Plaintiff argues "that the ability of the New York branch to get information about transactions that happen in Brazil is sufficient to suggest that there is jurisdiction over the Brazilian bank here in New York" and informing Plaintiff "that is just not what the law says"); *see also Gucci Am., Inc. v. Weixing Li,* 768 F.3d 122, 135 (2d Cir. 2014) (holding that a foreign bank is not subject to general jurisdiction merely because it maintains branch offices in New York when it "is incorporated and headquartered" abroad). Accordingly, Plaintiff has not shown that the May Order was clearly erroneous or contrary to law, and his objections are overruled.

## II. Plaintiff Has Not Shown That the June Order Was Clearly Erroneous or Contrary to Law

Plaintiff's objections to the June Order recast many of the same issues in several forms. He argues that Magistrate Judge Tarnofsky (1) applied a merits-stage jurisdictional standard at the discovery stage, June Order Obj. at 2-5; (2) effectively decided the issue of personal

jurisdiction, *id.* at 5-7; (3) refused to enforce the May Order, *id.* at 7-8; (4) accepted deficient productions[2] and "self-certification" from Defendants, *id.* at 8-11; (5) overlooked Tricon payment records involving a New York intermediary bank, *id.* at 11-12; (6) failed to apply Section 1965(a), *id.* at 12-14; and (7) did not account for PCC's designation as a Foreign Terrorist Organization or the relationship between Bradesco and its New York branch, *id.* at 14-15. He also challenges the denial of reconsideration. *Id.* at 16. The Court addresses each objection in turn and finds that none demonstrates clear error or legal error.

To begin, the June Order did not require Plaintiff to prove personal jurisdiction before obtaining jurisdictional discovery. By then, Plaintiff had already obtained jurisdictional discovery because the Court and Magistrate Judge Tarnofsky had granted it. *See* Dkt. 64 at 1 (granting "Plaintiff's request for limited jurisdictional discovery"); May Order at 3-4 (requiring productions by June 5, 2026); June Conf. Tr. at 10:4-11 (Bradesco Defendants relaying that they "ha[d] produced to [P]laintiff all of the documents [they] ha[d] about the 19 transactions . . . [a]nd . . . all of the organizational documents that ha[d] been requested"); *see id.* at 11:9-14 (Bradesco Defendants representing that "it's not surprising that, given that [each] [wa]s a deposit of Brazilian cash that those transactions did not transit to New York in any way"). The dispute before Magistrate Judge Tarnofsky was instead how far that discovery should extend and whether Defendants had complied with the Court's directives. Plaintiff's reliance on *Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899 (2d Cir. 1981), and *Dorchester Financial Securities, Inc. v. Banco BRJ, S.A.*, 722 F.3d 81 (2d Cir. 2013) (per curiam), is therefore misplaced. *See* June Order Obj. at 3 (citing *Marine Midland* and *Dorchester* for

---

[2] Plaintiff's objections concerning Bates numbering, June Order Obj. at 8-9, no longer require adjudication. In his Reply, Plaintiff accepted Bradesco's offered Bates-stamp overlay, Bradesco Opp. at 9 n.1, and expressly sought "no further relief concerning that issue." Reply at 6-7.

proposition that "[t]he Second Circuit has long held that a plaintiff who makes a sufficient start on jurisdictional facts is entitled to discovery to develop them"). Those cases recognize that a plaintiff may be entitled to develop jurisdictional facts and caution against resolving disputed jurisdictional facts against the plaintiff prematurely. *See Marine Midland*, 664 F.2d at 904; *Dorchester*, 722 F.3d at 85-86. They do not hold that, once jurisdictional discovery is permitted, a plaintiff is entitled to every category of discovery that might conceivably bear on jurisdiction. Indeed, such a holding would be contrary to the law. *See In re Terrorist Attacks on Sept. 11, 2001*, No. 03-md-01570 (GBD) (SN), 2021 WL 5449825, at *2 (S.D.N.Y. Nov. 22, 2021) ("[J]urisdictional discovery must be limited to the essentials necessary to determining the preliminary question of jurisdiction." (citation modified)); *Blockchain Mining Supply*, 2020 WL 7128968, at *2 ("Discovery need not be granted to allow a plaintiff to engage in an unfounded fishing expedition for jurisdictional facts." (citation omitted)); *Filus v. Lot Polish Airlines*, 907 F.2d 1328, 1332 (2d Cir. 1990) ("[G]enerally a plaintiff may be allowed *limited* discovery with respect to the jurisdictional issue[.]" (emphasis added)).

Nor did Magistrate Judge Tarnofsky decide the ultimate jurisdictional merits in the June Order. Her discussion of the law governing general and specific jurisdiction supplied the framework necessary to decide the parties' discovery dispute. *See* May Conf. Tr. at 24:10-24, 25:19-26:6, 27:4-10, 29:2-12; June Conf. Tr. at 15:4-18. Magistrate Judge Tarnofsky was merely considering what facts could matter to jurisdiction in order to determine whether the additional jurisdictional discovery Plaintiff sought was appropriately targeted. *See* May Conf. Tr. at 30:18-25. The June Order's conclusion that certain requested categories were too attenuated from the nineteen transactions was a discovery ruling, not an adjudication that this Court lacks personal jurisdiction over any Defendant. June Order at 2-4. The pending motions to dismiss, and related jurisdictional arguments, remain for this Court.

Magistrate Judge Tarnofsky also reasonably concluded that Plaintiff's expansive "conception of a transaction" exceeded the May Order. *Id.* at 3. Plaintiff sought, among other things, broad records concerning compliance systems, records access and custody, source and beneficiary accounts, intercompany movements, treasury and profit allocations, and "the broader Bradesco-Tricon banking relationship." *Id.* at 2-3. The June Order explained that Plaintiff's cited cases — *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161 (2d Cir. 2013) and *Al Rushaid v. Pictet & Cie*, 68 N.E.3d 1 (N.Y. 2016) — involved "repeated use of a New York correspondent account to further the specific alleged wrongdoing, not mere maintenance" of New York banking infrastructure or the theoretical ability of New York personnel to access records. June Order at 3 (quotation marks and citation omitted). It was not clear error to conclude that treating global records access or generalized banking relationships as a sufficient "connection" would untether the discovery from the specific transactions and from the jurisdictional inquiry. *See Licci*, 732 F.3d at 171-72.

The fact that unrelated Tricon transactions involved a New York intermediary bank does not compel a different result. Tricon disclosed that certain relevant-period methanol-related payments between Tricon entities cleared through a New York intermediary bank, while maintaining that those supply-side payments were not the nineteen Bio Petro-related deposits and were not tied to those deposits because methanol was fungible. *See* Dkt. 77 at 2-3; Tricon Opp. at 7-9. Magistrate Judge Tarnofsky considered this very point and concluded that the existence of some New York-cleared methanol payments did not justify broad discovery into the overall Bradesco-Tricon relationship. *See* June Order at 4. Plaintiff disputes Tricon's relevance characterization and argues that Tricon's concession makes transaction records responsive. *See* June Order Obj. at 11-12. But a Rule 72(a) objection is not an opportunity to reweigh a magistrate judge's discovery judgment. The record does not reveal any clear error by Magistrate

Judge Tarnofsky in distinguishing other Tricon payments from the nineteen transactions she had ordered Defendants to investigate.[3]

Plaintiff has likewise failed to show that Magistrate Judge Tarnofsky clearly erred in finding Defendants' productions compliant. As to the Bradesco Defendants, the record included underlying deposit records and a sworn declaration describing the location, currency, and routing of the nineteen deposits. Bradesco Opp. at 9-10. As to Tricon, Plaintiff demanded additional sworn, category-by-category certifications concerning search methodology. June Order Obj. at 9-10. However, Rule 26(g) already requires counsel to certify discovery responses after a reasonable inquiry, *see* Fed. R. Civ. P. 26(g)(1), and courts do not ordinarily permit "discovery on discovery" based only on speculation that a producing party's search was inadequate. *See Haroun v. ThoughtWorks, Inc.*, No. 20-cv-00100 (LJL), 2020 WL 6828490, at *1 (S.D.N.Y. Oct. 7, 2020); *cf. Harris v. Comput. Assocs. Int'l, Inc.*, 204 F.R.D. 44, 45 (E.D.N.Y. 2001) ("When a party merely speculates as to what evidence would be produced upon further discovery, a court is correct in denying the party's request to allow more discovery."). Magistrate Judge Tarnofsky was entitled to assess the productions, declarations, attorney representations, and the parties' competing descriptions of the searches and conclude that Plaintiff had not demonstrated noncompliance. *See* June Order at 1. Plaintiff's disagreement with the outcome of that assessment does not establish clear error.

---

[3] Plaintiff makes a similar argument, raised for the first time on reply, that records filed in the related Brazilian proceedings show that Bradesco was able to trace the origins of certain deposits through source accounts, checks, withdrawals, and same-day deposits, and therefore demonstrate that a broader transaction record exists. Reply at 3-4. Even accepting that characterization, those materials do not themselves show a New York connection, which Plaintiff expressly concedes. *Id.* at 4 ("Those exhibits do not themselves establish a New York connection"). They therefore do not render clearly erroneous Magistrate Judge Tarnofsky's conclusion that the May Order did not require production of every upstream or downstream record associated with the deposits.

Plaintiff's Section 1965 objection is also squarely answered by the June Order, wherein Magistrate Judge Tarnofsky correctly recognized that Section 1965 "does not confer nationwide jurisdiction over every defendant in every civil RICO case." June Order at 4 (quotation marks and citation omitted); *see PT United*, 138 F.3d at 71. She further concluded that the jurisdictional discovery already provided was "sufficient for Plaintiff to test whether any Defendant qualifie[d] as an anchor defendant and, if so, whether" the statutory and due-process requirements could be met as to "other Defendants." June Order at 4. Plaintiff faults the Order for not separately deciding whether a particular Defendant actually satisfied Section 1965(a). *See* June Order Obj. at 13-14. But that ultimate question is for this Court to decide on the motions to dismiss. Magistrate Judge Tarnofsky did not commit legal error by declining to decide a dispositive jurisdictional issue.

Nor do the PCC's terrorism designation or Bradesco's branch status establish clear error, for substantially the reasons already explained. The designation does not alter whether Defendants purposefully established relevant contacts with New York in connection with the conduct alleged in the Second Amended Complaint. And the fact that Bradesco's New York branch is part of Bradesco does not mean that every Brazilian transaction of the bank is, for jurisdictional purposes, connected to New York merely because New York personnel could theoretically access corporate records. Magistrate Judge Tarnofsky's rejection of that theory was reasoned and consistent with limits of specific jurisdiction.

Finally, Plaintiff has not shown error in Magistrate Judge Tarnofsky's denial of reconsideration. Reconsideration is "not a vehicle for relitigating old issues." *Analytical Surveys, Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012) (citation omitted), *as amended* (July 13, 2012). For that reason, reconsideration is subject to a "strict" standard and generally requires identification of "controlling decisions or data that the court overlooked." *Id.*

(citation omitted). Magistrate Judge Tarnofsky found that Plaintiff had not identified such controlling decisions or data that would reasonably alter her conclusion. June Order at 1. The arguments Plaintiff presents under Rule 72(a) largely repeat the same disagreements about scope, Section 1965, and the meaning of the produced records. That does not show that the reconsideration ruling was contrary to law or clearly erroneous.

In sum, the June Order reflects a reasoned exercise of discovery discretion. Plaintiff has not carried his heavy burden under Rule 72(a), and his objections to the June Order are overruled.

## III. Plaintiff Has Not Shown That the July Order Was Clearly Erroneous or Contrary to Law

Lastly, Plaintiff objects to Magistrate Judge Tarnofsky's July Order denying his motion for disclosure and recusal under 28 U.S.C. § 455(a) ("Section 455(a)"). *See* July Order Obj. Plaintiff contends, in substance, that (1) Magistrate Judge Tarnofsky stated the correct objective standard but applied a subjective actual-bias standard, *id.* at 7-8; (2) placed undue weight on her lack of prior knowledge of the asserted relationships, *id.* at 12; (3) improperly distinguished *Sorial v. Robinhood Financial, LLC*, No. 24-cv-02752 (JLR) (RFT), 2024 WL 4308357 (S.D.N.Y. Sept. 26, 2024), July Order Obj. at 12-13; (4) failed to consider the asserted relationships cumulatively, *id.* at 10-11; (5) improperly discounted Plaintiff's statistical model, *id.* at 11-12; (6) improperly relied on *Liteky v. United States*, 510 U.S. 540 (1994), July Order Obj. at 13; and (7) should, at minimum, have ordered additional disclosure, *id.* at 13-14. None of these arguments demonstrate that the July Order was clearly erroneous or contrary to law.

Section 455(a) provides that a federal judge "shall disqualify [her]self in any proceeding in which [her] impartiality might reasonably be questioned." 28 U.S.C. § 455(a). The inquiry is objective: the Court asks "whether a reasonable person, knowing all the facts, would conclude

that the trial judge's impartiality could reasonably be questioned." *United States v. Wedd*, 993 F.3d 104, 114 (2d Cir. 2021) (citation omitted). Thus, "what matters is not the reality of bias or prejudice but its appearance." *United States v. Rechnitz*, 75 F.4th 131, 142 (2d Cir. 2023) (quoting *Liteky*, 510 U.S. at 548). Accordingly, where the asserted interests or relationships are "remote, contingent, indirect or speculative," recusal is not required. *United States v. Lovaglia*, 954 F.2d 811, 815 (2d Cir. 1992).

Magistrate Judge Tarnofsky identified and applied that objective standard. *See* July Order at 2-3. Indeed, Plaintiff expressly acknowledges that the July Order "correctly quotes the fully informed objective-observer test" and, "[f]or purposes of his objection, he accepts every factual representation [the July Order] makes concerning [Magistrate Judge Tarnofsky]'s knowledge and relationships." July Order Obj. at 5, 8. Plaintiff nevertheless argues that the July Order departed from that standard because Magistrate Judge Tarnofsky considered what she personally knew; whether she had financial ties to counsel for the Bradesco Defendants, Quinn Emanuel Urquhart & Sullivan, LLP ("Quinn Emanuel"); whether Beth Goldman ("Goldman"), with whom Plaintiff alleged Tricon and TEL's counsel Louis Solomon ("Solomon") had a familial relationship, Dkt. 100 at 8, directly supervised her during their overlapping tenure at the New York Legal Assistance Group ("NYLAG"); whether she and Goldman were close friends; and whether she knew or recalled meeting Solomon. *See* July Order Obj. at 8-9. The Court disagrees.

Magistrate Judge Tarnofsky's consideration of those facts did not substitute a subjective test for the objective one. The supplied facts were merely what a fully informed objective observer would consider. Magistrate Judge Tarnofsky explained that "neither [she] nor [her] husband nor [their] minor children ha[d] financial ties to Mr. Solomon or a financial interest in . . . Quinn Emanuel"; that she had "no personal or professional relationship with" Solomon;

and that, although she had professional relationships with certain individual Quinn Emanuel attorneys through activities such as bar committees, none was "sufficiently close . . . to warrant screening and disclosure." July Order at 4-5. She further explained that Goldman was NYLAG's Attorney-in-Charge during most of Magistrate Judge Tarnofsky's seven years there and participated in interviewing her, but that Magistrate Judge Tarnofsky reported to NYLAG's general counsel, not to Goldman; that Magistrate Judge Tarnofsky and Goldman were cordial but not close friends; that Magistrate Judge Tarnofsky did not know whether Goldman was related to Solomon; and that she did not recall meeting Solomon before he appeared in this action. *Id.* at 5. The closeness, nature, and extent of asserted relationships are plainly pertinent to how an informed observer would assess them.

Plaintiff therefore places too much weight on the July Order's observation that even an acquaintance with Solomon would not, without some factual basis suggesting bias, require recusal. *See id.* at 5-6. Reading it in isolation, Plaintiff characterizes that statement as importing an actual-bias requirement into Section 455(a). *See* July Order Obj. at 8. But the July Order did not require Plaintiff to prove actual bias. It considered whether the relationships Plaintiff identified, as they actually existed, objectively created an appearance of partiality, and it relied on authority holding that professional relationships considerably closer than those alleged here do not ordinarily require recusal. *See* July Order at 4-7; *see also Nat'l Auto Brokers Corp. v. Gen. Motors Corp.*, 572 F.2d 953, 958 (2d Cir. 1978) ("[P]rior representation of a party by a judge or his firm with regard to a matter unrelated to litigation before him does not automatically require recusal."); *Lovaglia*, 954 F.2d at 815 ("A judge's prior representation of one of the parties in a proceeding, for example, does not automatically warrant disqualification."). There is no legal error in that analysis.

The same is true of Plaintiff's argument concerning Magistrate Judge Tarnofsky's husband and Quinn Emanuel. The July Order clarified that Magistrate Judge Tarnofsky's husband serves as co-counsel with certain Quinn Emanuel attorneys in an unrelated matter. *See* July Order at 6; *see also* Bradesco Recusal Opp. at 1-2 (noting that the unrelated matter is in the Ninth Circuit and that different Quinn Emanuel attorneys represent the Bradesco Defendants here). And Magistrate Judge Tarnofsky further explained that her husband serves as "co-counsel with dozens of firms in unrelated cases." July Order at 6. The Second Circuit has held that professional connections substantially more direct than this do not automatically require recusal. *See Nat'l Auto Brokers*, 572 F.2d at 958 (observing that recusal is not "automatically require[d]" where judge has previously represented a party to the action "with regard to a matter unrelated to litigation before him"). Magistrate Judge Tarnofsky therefore reasonably concluded that this indirect, unrelated co-counsel relationship would not cause an informed observer to question her impartiality.

Plaintiff contends that, although Magistrate Judge Tarnofsky's discussion of her relationship (or lack thereof) with Solomon and Quinn Emanuel may explain their absence from her conflict-screening list, the other facts raised in his recusal motion should have prompted a reevaluation of those relationships and led to recusal. July Order Obj. at 12. In support of that argument, Plaintiff cites *Liljeberg v. Health Services Acquisition Corp.*, 486 U.S. 847, 859-60 (1988) for the proposition that a judge's prior lack of knowledge does not by itself defeat a Section 455(a) claim. *See* July Order Obj. at 12. But *Liljeberg* is inapt. The July Order did not treat Magistrate Judge Tarnofsky's prior lack of knowledge as dispositive. Once Plaintiff brought the asserted connections to her attention, Magistrate Judge Tarnofsky set forth the relevant facts, evaluated whether those facts required recusal, and concluded that they did not.

Plaintiff's other principal authorities involved materially more direct connections to the parties, the litigation, or its subject matter. *See id.* at 10-12. In *United States v. Amico*, for example, the presiding judge was personally confronted with allegations of impropriety concerning the same type of conduct for which the defendants were being prosecuted. 486 F.3d 764, 768, 775-76 (2d Cir. 2007) ("The recusal issue arose from allegations by [a cooperating witness] that he had helped prepare a fraudulent application in 1987 — before the beginning of his scheme with the [defendant] — for Judge Siragusa[.]"). And in *Sorial*, Magistrate Judge Tarnofsky's husband had personally provided legal services to a defendant appearing before her, while his firm maintained a substantial ongoing relationship with that defendant. *See Sorial*, 2024 WL 4308357, at *3. No analogous relationship exists here: Defendants are not alleged to be clients of Magistrate Judge Tarnofsky's husband or his law firm, her husband has provided no services to Defendants, and he has no involvement in this action. *See* July Order at 7-8. Magistrate Judge Tarnofsky did not err in finding *Sorial* materially distinguishable, which Plaintiff himself appears to concede. *See* July Order Obj. at 12 ("*Sorial* is distinguishable[.]" (citation modified)).

Nor did Magistrate Judge Tarnofsky fail to consider Plaintiff's asserted relationships cumulatively. The July Order expressly acknowledged Plaintiff's contention that the asserted Goldman-Solomon relationship, the unrelated Quinn Emanuel co-counsel relationship, and other professional or institutional overlaps should be considered collectively rather than "in isolation." July Order at 4. It then examined the factual predicates of those asserted connections and determined that they were too remote to create an objectively reasonable question concerning impartiality. *See id.* at 4-9. Plaintiff identifies no authority requiring a court, after evaluating each asserted relationship and the asserted confluence among them, to perform some additional formal aggregation analysis. Nor does the concurrence of multiple remote connections

necessarily transform those connections into a reasonable basis for questioning impartiality. The pertinent question remains whether an informed observer, knowing the actual facts underlying all of the asserted connections, would reasonably question the judge's impartiality. Magistrate Judge Tarnofsky reasonably concluded that such an observer would not.

Plaintiff's probability model does not establish otherwise. Plaintiff calculates "that the probability both defense-side counsel teams would independently present separate public-record relationship pathways to the same assigned magistrate judge is below 1%," Dkt. 100 at 6, based on assumptions concerning the relevant universe of law firms, qualifying relationships, and independence of the asserted events. *See* July Order Obj. at 11 ("[T]he arithmetic yields approximately 0.071% to 0.444%."). Even assuming the arithmetic correctly follows from Plaintiff's chosen premises, however, the statistical rarity of a coincidence is not the test under Section 455(a). The statute asks whether the *nature of the relationships*, viewed by a reasonable person informed of all the facts, creates a reasonable question concerning impartiality. *See Wedd*, 993 F.3d at 114. A statistically unusual concurrence of remote and unrelated professional connections does not become disqualifying merely by virtue of its asserted rarity. Magistrate Judge Tarnofsky therefore did not clearly err in declining to give Plaintiff's model the significance he assigns to it.

Plaintiff also argues that the July Order improperly invoked *Liteky* because his discovery complaints were offered as context alongside extrajudicial facts rather than as an independent claim that adverse rulings proved bias. *See* July Order Obj. at 13. As discussed, Magistrate Judge Tarnofsky addressed the alleged extrajudicial facts at length and found them insufficient to create a reasonable appearance of partiality. *See* July Order at 4-9. Against that backdrop, she correctly observed that adverse judicial rulings generally do not supply a basis for recusal absent circumstances demonstrating "deep-seated favoritism or antagonism that would make fair

judgment impossible." *Id.* at 3 (citing *Liteky*, 510 U.S. at 555). Plaintiff's disagreement with the scope of jurisdictional discovery and his perception that Magistrate Judge Tarnofsky was more receptive to Defendants' positions at conferences do not materially alter the objective significance of the attenuated relationships discussed above. *See id.* at 8-9.

Finally, Plaintiff has not shown that Section 455(a) independently entitled him to additional discovery or disclosures regarding Magistrate Judge Tarnofsky's personal and professional relationships. The July Order itself disclosed the material facts concerning Magistrate Judge Tarnofsky's relationship with Goldman, her lack of a relationship with Solomon, her contacts with Quinn Emanuel attorneys, the absence of financial ties, and her husband's unrelated co-counsel relationship. *Id.* at 4-6. Having determined on that record that no reasonable question concerning impartiality existed, Magistrate Judge Tarnofsky did not clearly err by declining to authorize further inquiry. Plaintiff's requests for withdrawal of the referral, vacatur or reconsideration of prior orders, and a stay were derivative of his unsuccessful recusal argument and were therefore properly denied as well.

In short, the July Order identified the governing objective standard, developed and considered the facts underlying each of Plaintiff's asserted connections, considered Plaintiff's cumulative theory, distinguished materially different recusal precedents, and reasonably concluded that the asserted relationships were too indirect and attenuated to cause an informed observer to question Magistrate Judge Tarnofsky's impartiality. Because Plaintiff has not demonstrated that the July Order was clearly erroneous or contrary to law, his objections are overruled.

**CONCLUSION**

For the foregoing reasons, Plaintiff's objections to Magistrate Judge Tarnofsky's May 29, June 29, and July 10, 2026 Orders are OVERRULED. As previously ordered, Plaintiff's

consolidated opposition to the pending motions to dismiss, Dkts. 37, 47, 105, is due by **October 5, 2026**, and Defendants' replies are due fourteen days after Plaintiff submits his opposition. *See* Dkt. 117.

Dated: September 14, 2026
New York, New York

SO ORDERED.

Jennifer Rochon
JENNIFER L. ROCHON
United States District Judge